383 F.2d 694
 LINCOLN BANK & TRUST COMPANY, a State Banking Corporation, Appellant,
v.
EXCHANGE NATIONAL BANK AND TRUST COMPANY, ARDMORE, Ardmore, OKLAHOMA, a National Banking Corporation, Appellee.
 No. 9096.
 United States Court of Appeals Tenth Circuit.
 September 12, 1967.
 
 COPYRIGHT MATERIAL OMITTED Louis A. Fischl, Ardmore, Okl. (Joseph M. Culp, F. Lovell McMillin, Ardmore, Okl., on the brief), for appellant.
 John W. Swinford, Oklahoma City, Okl. (Martin E. Dyer, Ardmore, Okl., on the brief), for appellee.
 Before JONES*, SETH and HICKEY, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 Ardmore, Oklahoma, formerly had two banks, the appellee, Exchange National Bank and Trust Company, and the First National Bank and Trust Company. The appellant, Lincoln Bank & Trust Company, was given a charter by the State of Oklahoma for the operation of a bank in Ardmore and it opened for business on November 9, 1964, in a trailer at a temporary location known as 301 West Main Street. The Exchange bank is a long established institution having its main bank which, until recently, was its only banking house, located at 15 West Main Street in Ardmore. This location is a little more than two blocks distant from the location of the Lincoln bank. On October 15, 1965, the Comptroller of the Currency, notwithstanding a protest of the Lincoln bank, approved the application of the Exchange bank, pursuant to 12 U.S.C.A. § 36(c)[1] for the establishment of a branch at 310 West Main Street, across the street from the quarters of the Lincoln bank. An Oklahoma statute restricted the facilities which could be operated and limited the distance of the facilities from the main bank.[2] An Ardmore newspaper of January 16, 1966 announced the plans of the Exchange bank to establish a branch[3] bank at the 310 West Main Street location. The announcement stated that the branch would have three drive-in units, an airconditioned lobby, inside teller windows, off-street parking and a night depository. The president of the bank was quoted as saying that "Bank checking and savings account customers can obtain all of the services that they are accustomed to in the present bank."
 
 
 2
 Shortly after the newspaper announcement, the Lincoln bank sued the Exchange bank in an Oklahoma court setting out the newspaper report and alleging that if the Exchange bank carried out its announced plans it would be violating the Oklahoma statute by locating its branch more than a thousand feet from its main bank building, and by conducting other banking business at the branch than is permitted by the statute. Declaratory and injunctive relief was sought. The cause was removed to the Federal district court under 28 U.S.C.A. § 1331 as involving a Federal question.
 
 
 3
 The case was tried to the court without a jury. The court found that the distance from the northwest corner of the main bank building to the northeast corner of the facility site was 945.9 feet, and held that the thousand foot requirement of the Oklahoma statute had been met. The court rejected Lincoln bank's contention that all of the structures of the facility were required to be within the thousand foot distance. The court found that the facility or branch would contain outside drive-in and walk-up teller windows, an off-street parking area would be established, and a heated and cooled lobby would be provided with access to the tellers' windows from the lobby. The court found that the bank, at the branch or facility, expected to accept customer deposits for both checking and savings accounts, open new deposit accounts, maintain a night depository, cash checks, make change, cash savings bonds, issue cashiers and certified checks, verify balances and render customer statements. The court held that the proposed facilities and contemplated functions did not conflict with the Oklahoma statute. In construing and applying terms of the Oklahoma statute the court received and considered, over objection, evidence of the services which other banks throughout Oklahoma, both State and National, were permitted to render at similar detached facilities. At a hearing on a motion to dismiss the complaint counsel for Lincoln bank made a statement[4] that the Comptroller's action was not challenged and that reliance was placed upon two basic grounds, that the Exchange bank proposed to carry on an unlawful operation and that the distance was beyond the permitted limit. Notwithstanding these assertions, the district court permitted Lincoln bank to urge, at the trial, that the Comptroller's action was unwarranted and should be set aside. The court rejected this claim of Lincoln bank. Judgment was entered for the Exchange bank. Lincoln bank has appealed.
 
 
 4
 The question whether the thousand foot requirement of the Oklahoma statute has been met involves the meaning of the statutory language. The statute does not say that the structures of the detached facility must be, either wholly or partially, within a thousand feet of the bank building. It is the property on which the facility is located that must meet the distance test. It may be noted that in measuring from the main bank the starting point is "the main bank building," but the dimensional point at the other end is the "property," and this means the property line.[5] There was no error in the district court's construction of the statutory provision relating to distance. At the time of the trial there was pending before the Oklahoma Banking Board a proposed regulation providing that the thousand foot distance would be measured from the nearest point of the main bank building to the nearest point of the property line of the property to be used as a part of the detached facility. The regulation was adopted prior to the entry of the district court's judgment. It is unnecessary to give consideration to the validity or applicability here of the regulation.
 
 
 5
 The district court received evidence that a considerable number of banks in Oklahoma, both State and National, had been maintaining facilities, rendering services and performing functions at detached facilities of the same kind as those which the Exchange bank proposed to maintain, render and perform. The Lincoln bank objected to the receipt of this evidence and asserts it was error for the district court to receive and consider it. The functions of a bank are twofold. As banks of deposit they receive funds from their customers, subject to check, or in interest bearing savings accounts or represented by certificates of deposit. Incident to this activity banks cash checks, make change, and issue cashiers checks and bank drafts. As banks of discount they discount commercial paper, make loans and purchase bonds and other securities. In the one role it is a debtor; in the other it is a creditor. Historically, but not in recent years, the functions of banks of deposit and banks of discount were performed by separate institutions. At a time in the not too distant past banks performed a third function, that of banks of issue, in which role they issued their own notes which were intended to circulate as currency. Auten v. United States National Bank, 174 U.S. 125, 19 S.Ct. 628, 43 L. Ed. 920; Wells Fargo & Co. v. Northern Pacific Railway Co., Cir.Ct.D.Oregon 1884, 23 F. 469; 9 C.J.S. Banks and Banking § 1, p. 28. The privilege of acting as a bank of issue is now restricted, in the United States, to Federal Reserve banks.
 
 
 6
 It can be contended, most plausibly, that the statutory privilege, granted to banks by Oklahoma, "of taking deposits, making change and cashing checks" at a detached facility should be regarded as authorizing the exercise of all of the usual functions of banks of deposit. Whether this view, or one which would confine the effect of the statute to its narrow and literal terms, should prevail, presents a question of statutory construction. The statutory provision was enacted in 1957. The provision was incorporated into a codification in 1965. In the interim a number of State and National banks had established, maintained and operated detached facilities performing functions and services as the Exchange bank planned to do. The Attorney General of Oklahoma is directed, upon the recommendation of the Commissioner of Banks, to bring an action to enjoin a bank from conducting banking functions at such a facility other than those specified. 6 Okl.St.Ann. § 415, subd. B(3). It is not to be supposed that the Oklahoma Bank Commissioner was unaware of the nature of the business done by banks of that state at their detached facilities. Nor will it be presumed that if the Bank Commissioner believed that the statute was violated he would have failed to make a recommendation to the Attorney General that an action should be brought. It is to be taken for granted that if such recommendation had been made, the Attorney General would have performed his duty and brought actions. No actions were brought. This leads to the conclusion that the Bank Commissioner, who was the head of Oklahoma's banking department, made a determination, informally perhaps, that the activities of the banks were not outside the statutory authorization. In so doing it would seem that he had regarded the statutory language as ambiguous and had given it an administrative construction, and in so doing rejected the narrow, restrictive and literal interpretation.
 
 
 7
 The consistent and continued construction of an ambiguous state statute, and we believe the one before us is ambiguous, by administrative officers of the state is entitled to great weight and will not ordinarily be overturned by a contrary judicial interpretation. The reenactment of a statutory provision, without substantial change, is persuasive of a legislative recognition and approval of the consistent administrative construction placed upon it. Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179; Grand River Dam Authority v. National Gypsum Co., 10th Cir. 1965, 352 F.2d 130, cert. den. 383 U.S. 907, 86 S.Ct. 888, 15 L.Ed.2d 663; United States for Use and Benefit of Miles Lumber Co. v. Harrison & Grimshaw Construction Co., 10th Cir. 1962, 305 F.2d 363, cert. den. 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229; Standard Surety & Casualty Co. of New York v. State of Oklahoma, 10th Cir. 1944, 145 F.2d 605.
 
 
 8
 The foregoing principles serve as aids in construction but may not be, in all events, controlling. They are but factors, although important ones, to be used in ascertaining the legislative intent and in ascertaining the meaning of its language. Sutherland, Statutory Construction 3rd. Horack § 5101 et seq. This was recognized in the statement of the district court in admitting the evidence.[6] Although we are construing the words of the Oklahoma statute, it is the Federal law, as set forth in the Federal statute, that we are applying. The purpose and policy of the Federal Act are set forth by the Supreme Court in these terms:
 
 
 9
 "It appears clear from this résumé of the legislative history of § 36(c) (1) and (2) that Congress intended to place national and state banks on a basis of `competitive equality' insofar as branch banking was concerned. Both sponsors of the applicable banking Acts, Representative McFadden and Senator Glass, so characterized the legislation. It is not for us to so construe the Acts as to frustrate this clear-cut purpose so forcefully expressed by both friend and foe of the legislation at the time of its adoption. To us it appears beyond question that the Congress was continuing its policy of equalization first adopted in the National Bank Act of 1864." First National Bank of Logan v. Walker Bank and Trust Company, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343.
 
 
 10
 The doctrine of competitive equality would not be given effect if the statutory provisions were so interpreted and applied as to deny to a National bank privileges which the State is allowing other institutions to exercise.
 
 
 11
 The Lincoln bank has urged that the district court erroneously held that the physical facility did not violate the Oklahoma statute. The statute permits "one detached facility." The Lincoln bank says that because the Exchange bank will have three structures it will have three facilities. The district court did not and this Court does not so construe the phrase. The "facility" which the Exchange bank is authorized to operate can be comprised of such structures, whether one or more, as it may deem appropriate for performing the functions and rendering the services at the selected location and such structures, if more than one, are but one facility.
 
 
 12
 The district court permitted the Lincoln bank to inject into the case the question whether the action of the Comptroller of the Currency in approving the application of the Exchange bank to establish a branch was arbitrary, capricious and an abuse of discretion. The judicial determination of this question requires a review of an administrative action. Such review may be had only if the provisions of Administrative Procedure Act, 5 U.S.C.A. §§ 1001-1011, are followed. In a proceeding for such a review the Comptroller of the Currency is an indispensable party. Johnson v. Kirkland, 5th Cir. 1961, 290 F.2d 440, cert. den. 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed.2d 88; McEachern v. United States, 4th Cir. 1963, 321 F.2d 31. Since there was no jurisdiction of an indispensable party, the district court should not have passed upon the issue. It is not here considered.
 
 
 13
 No error is disclosed by the record. The judgment of the district court will be affirmed.
 
 
 14
 The Lincoln bank filed in the district court a motion under Rule 60(b), Fed.Rules Civ.Proc. for relief on the ground of newly discovered evidence. The motion was filed subsequent to the argument and submission of this appeal. It has filed in this Court a motion to remand so that the district court may act upon the motion filed there. The district court has said that the motion for relief is without merit and declined to request a remand from this Court. It follows that the motion to remand should be denied.
 
 
 15
 Motion to remand denied. Judgment affirmed.
 
 
 
 Notes:
 
 
 *
 of the Fifth Circuit, sitting by designation
 
 
 [1]
 "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks." 12 U.S.C.A. § 36(c)
 
 
 [2]
 "Any bank chartered under the laws of this state may, subject to the approval of the Board as evidenced by its certificate, maintain and operate outside attached facilities and one detached facility having one or more tellers' windows for drive-in or walk-up service or both on property owned or leased by the bank located less than one thousand feet from the main bank building." Title 6 Okl. St.Ann. § 415
 
 
 [3]
 A "facility," as used in the Oklahoma statute, would be encompassed within "branch" as used in the Federal Act. See Continental Bank & Trust Co. v. Taylor, 14 Utah 2d 370, 384 P.2d 796
 
 
 [4]
 "So far in the law suit we have raised no issue with the Comptroller of the Currency. One reason is we don't know what the Comptroller of the Currency acted upon or what he did. We assume he acted within the law. We think that that will be the assumption that the court would invoke with respect to whatever action he may have taken in the matter. So at this point we have no quarrel with him."
 
 
 [5]
 A situation might be conjectured where the property line of a large tract would be within the thousand foot limit but the facility itself would be situated at a considerable distance beyond. If such a situation is presented to a court it can be dealt with by the court when presented. It is not before this Court in this cause
 
 
 [6]
 "I agree with you 100 percent, the fact that there may be 100 banks in the state of Oklahoma operating outside the law doesn't mean that this Court should grant a license to this defendant to operate outside the law. But, for whatever assistance it can be to this Court in arriving at the decision I am going to overrule your objection and admit the exhibit in evidence and give it whatever consideration I determine it should receive."