**AMERICAN FIDELITY BANK & TRUST COMPANY & John L. Williams, Jr., Commissioner, Department of Banking & Securities, Commonwealth of Kentucky, Plaintiffs-Appellants,**

v.

**John G. HEIMANN, Comptroller of the Currency, U.S. Department of the Treasury and First National Bank & Trust Company of Corbin, Kentucky, Defendants-Appellees.**

No. 81–5316.

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1982.

Decided July 20, 1982.

Thomas W. Bullitt, Stewart L. Prather, Wyatt, Tarrant & Combs, Richard W. Iler,

---

Louisville, Ky., Andrew Palmer, III, Frankfort, Ky., for plaintiffs-appellants.

Patrick Molloy, U. S. Atty., Thomas L. Self, Asst. U. S. Atty., G. Lee Langston, Stoll, Keenon & Park, Lexington, Ky., L. Robert Griffin, Ronald R. Glancz, Litigation Div., Comptroller of the Currency, Washington, D. C., for defendants-appellees.

Before LIVELY and KRUPANSKY, Circuit Judges, and GILMORE,* District Judge.

LIVELY, Circuit Judge.

The question in this case is whether the Comptroller of the Currency properly granted the application of a national bank to establish a branch. The case arises out of a somewhat unusual situation. The City of Corbin, Kentucky is incorporated in two Kentucky counties, Whitley and Knox. Though the older part of the city is primarily in Whitley County, recent growth has placed a significant portion of Corbin in adjoining Knox County. Kentucky does not permit multiple-county banking, but it does permit a state bank to establish branches within the city in which its principal office is located. The defendant-appellee, First National Bank & Trust Co., has its principal office in that portion of Corbin which lies in Whitley County. It sought and received permission from the Comptroller to establish a branch in a shopping center which is within the city limits of Corbin, but is located in that portion of Corbin which lies within Knox County. This action contesting the Comptroller's decision was brought by American Fidelity Bank & Trust Company, a state bank with its principal office in Barbourville, Knox County, and the Commissioner of the Kentucky Department of Banking & Securities. The district court upheld the ruling of the Comptroller on cross-motions for summary judgment. *American Fidelity Bank & Trust Co. v. First National Bank & Trust Co.,* 510 F.Supp. 1122 (E.D.Ky.1981).

* The Honorable Horace Gilmore, Judge, U.S. District Court for the Eastern District of Michigan, sitting by designation.

## I.

### A.

Ours is a dual banking system in the sense that state and national banks have existed side by side and in direct competition with each other for many years. Many states place severe limits on the right of state-chartered banks to establish branches. In order to maintain competitive equality between banks in the two systems, Congress has tied the right of national banks to establish branches directly to the law of the states. In 1927 Congress dealt with problems of branches for national banks in the McFadden Act. The McFadden Act as amended by the Banking Act of 1933 is now codified as 12 U.S.C. § 36(c), which provides in pertinent part:

(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

All parties to this appeal agree that the Kentucky law which is incorporated into federal law by § 36(c) is found in Kentucky Revised Statutes (KRS) section 287.180(2). The relevant part of KRS 287.180(2) states:

Any corporation presently or hereafter engaged in the business of banking, and meeting the requirements of this subsection, may apply to the commissioner of banking and securities for permission to

establish, within the city in which its principal office is located and, subject to the limitation hereinafter imposed, within the county in which its principal office is located a branch at which all of the powers conferred in subsection (1) of this section may be exercised.

### B.

The district court found no ambiguity in the language of KRS 287.180(2). The words "within the city in which its principal office is located" were held to be "clearly sufficient to authorize establishment of the branch sought in this case." 510 F.Supp. at 1124. The district court read this language as creating one of two options granted state banks by the statute. The language which follows the connective "and" was found to create a second option—that of establishing a branch anywhere in the county in which a bank's principal office is located. Thus the statute was found by the district court to contain two separate authorizations. The court did not read the reference to the county in which the principal office is located as a limitation on the right to establish a branch within the city where the principal office is located.

The district court's dispositive language is set forth:

The language of KRS 287.180(2) is unambiguous. The language "within the city in which its principal office is located" is clearly sufficient to authorize establishment of the branch sought in this case. This is the first option which the state grants to a bank. The second option is described in another section: (2)(b), where it authorizes branches outside a principal city but within the same county, if certain requirements are met. However, the defendant in this case does not need to rely on the additional powers granted in the second phrase, since it only seeks to operate within its principal city. The word "and" in the statute is used to link the two powers or options available to a bank seeking to establish a branch, not to link two distinct requirements.

\*     \*     \*     \*     \*     \*

In conclusion, the Court finds that the Kentucky Commissioner of Banking's position is not supported by a literal reading of the statutory language. Plaintiffs have not introduced adequate other evidence of legislative history or other means to show that the legislature intended something other than what was expressed.

510 F.Supp. at 1124.

### II.

### A.

American Fidelity and the Commissioner make several arguments on appeal. They agree with the district court that the language of KRS 287.180(2) is unambiguous. However, the appellants contend the only possible interpretation of the statute is that a bank which seeks to establish a branch within the city in which its principal place of business is situated may do so only at a location which is also within the county in which the principal office of the bank is found. The appellants put emphasis on the legislature's use of the conjunctive "and" rather than the disjunctive "or" between the two clauses and contend that the second clause clearly adds a requirement or condition to the first. Under this reading a state bank would not be authorized to establish a branch in an adjoining county, even though the location selected might be within the corporate limits of the city where the bank *maintains its principal office.*

On the basis of their interpretation American Fidelity and the Commissioner assert that the Comptroller erred as a matter of law in granting First National's application. The appellants contend that the Comptroller has ignored state law in the guise of interpreting it. While conceding that there are no judicial interpretations of KRS 287.180(2), the appellants assert that state "law" which is binding on the Comptroller is found in an interpretation of the statute by the Kentucky Department of Banking & Securities. They rely particularly on a written opinion by the general counsel of the Department to the effect

that "KRS 287.180(2) places limitation on branching within the city and within the county in which the bank's principal office is located . . . ." App. 49–50.

### B.

First National and the Comptroller also find no ambiguity in the language of KRS 287.180(2). As appellees they agree with the district court that the statute contains two distinct grants of authority with respect to bank branches. Only the first—the right to establish a branch within the city where the principal office of a bank is located—is involved in this case, they maintain. The second grant of authority relates to establishment of a branch elsewhere in the county of the principal office—an authority which First National is not seeking to exercise. The appellees argue that the two provisions of the statute recognize the fact that cities and counties are distinct political subdivisions having different geographic boundaries. They point out that the statute makes the right to establish a branch within the city containing the principal office unconditional whereas the right to do so within the county of the principal office is made "subject to the limitations hereinafter imposed." They argue that this difference further indicates that two separate grants of authority are included in the statute.

### III.

The appellants made a motion that this court "certify to the Supreme Court of Kentucky, pursuant to Kentucky Rules of Civil Procedure 76.37, the question of the proper interpretation of Kentucky Revised Statute 287.180(2)." This motion was carefully considered, but the court concludes that it should be denied.

The unique situation of First National Bank has been alluded to. Since Corbin is the only city in Kentucky with a population of more than 1,000 which lies within the territory of more than one county, the likelihood of recurrence of the precise question raised by this case is remote. Thus certification would merely have the effect of transferring this particular case to the Kentucky court for a decision. That would not be a proper exercise of judicial responsibility. The correct decision in this case requires an interpretation of KRS 287.180(2) in the light of 12 U.S.C. § 36(c). It is our duty to determine whether the Comptroller has complied with the requirements of the federal statute.

Further, even if this were a case which is likely to recur, it does not appear to be appropriate for certification. No legislative history of KRS 287.180(2) has been found and no decisions by Kentucky courts construing analogous statutes have been cited. Thus the task in this case is one of reading and interpreting statutory language as written. Considering these factors and the inevitable delay inherent in the certification process, we conclude that this case is one which should be decided here and now. *Cf. State ex rel. Shevin v. Exxon Corporation*, 526 F.2d 266, 274–75 (5th Cir. 1976).

### IV.

#### A.

■ The Supreme Court has determined that competitive equality between state and national banks was the goal of the McFadden Act. *First National Bank of Logan v. Walker Bank & Trust Co.*, 385 U.S. 252, 258, 87 S.Ct. 492, 495, 17 L.Ed.2d 343 (1966). In *Walker Bank & Trust* the Court found that the Comptroller was attempting to circumvent a clear limitation contained in the applicable state statute dealing with branch banks. The Court held that competitive equality is maintained only by restricting branch banking by national banks to precisely the same extent that state banks are restricted by applicable state law. In *First National Bank of Plant City v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969), the Supreme Court was concerned primarily with the definition of a branch bank. After reviewing the history of federal legislation dealing with branch banking the Court wrote:

> The policy of competitive equality is therefore firmly embedded in the statutes

governing the national banking system. The mechanism of referring to state law is simply one designed to implement that congressional intent and build into the federal statute a self-executing provision to accommodate to changes in state regulation.

*Id.* at 133, 90 S.Ct. at 343. The Court determined that the definition of "branch" presented a question of federal law, but found that state law "comes into play in deciding how, where, and when branch banks may be operated." *Id.* Upon concluding that the facilities which the Comptroller had authorized a national bank to establish were indeed "branches" under federal law, the Court held that state law did not permit them. The Comptroller was found not to have given due deference to state standards.

In *Howell v. Citizens First National Bank of Ridgewood,* 385 F.2d 528, 530 (3d Cir. 1967), Judge Maris wrote of the McFadden Act:

In any event it is clear that the rule was intended by the Congress to limit the applicability to national banks of state branch banking laws solely to such authority as is expressly granted by a statute. Thus the determination of the extent of the application of a state branch banking statute to a national bank under the federal Banking Act of 1933 is purely a question of federal law, a question to be decided by reading the state statute through lenses prescribed by the Congress.

Later in *Springfield State Bank v. National State Bank of Elizabeth,* 459 F.2d 712, 717 (3d Cir. 1972), the court again speaking through Judge Maris, expanded its *Howell* decision:

The responsibilities of the Comptroller of the Currency in dealing with an application for the establishment of a branch office under the national banking law, 12 U.S.C.A. § 36(c), are twofold. In the first place, he may grant the application only if the statutory law of the state in which the national bank is situated authorizes state banks to establish and oper-

ate branches "by language specifically granting such authority affirmatively and not merely by implication or recognition." This, as we pointed out in *Howell v. Citizens First National Bank of Ridgewood,* 3 Cir., 1967, 385 F.2d 528, 530, involves a federal question "to be decided by reading the state statute through lenses prescribed by the Congress." But, in addition to determining this question, the Comptroller must apply to the application "the restrictions as to location imposed by the law of the State on State banks." The latter involves no federal question. On the contrary, after having found that the statutes of the state, read through the Congressionally prescribed spectacles, authorize branch banking, it becomes the duty of the Comptroller, in determining whether a national bank may establish a branch at a particular location in the state, to follow and apply the whole relevant statutory and decisional law of the state as interpreted by its courts and applied to its state banks. We think it is clear from the way in which the federal statute is written that when the Comptroller comes to act upon the application of a national bank for a branch in a state which he finds specifically authorizes branch banking he is to apply the state restrictions upon its location in exactly the same way as the state banking authorities would be required to do with respect to an application by a state bank for a branch at the same location. *First Nat. Bank of Logan, Utah v. Walker Bank,* 1966, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343; *First National Bank in Plant City, Florida v. Dickinson,* 1969, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312.

**B.**

Since no Kentucky court has construed KRS 287.180(2) we are not concerned in this case with the deference due a state court's interpretation of a branch banking statute. *Cf. Springfield State Bank, supra.* The state "law" relied upon here is an administrative opinion concerning the meaning of the statute. Various courts have dealt differently with the question of the deference

owed state administrative interpretations depending on the circumstances of particular cases. *See, e.g., Lincoln Bank & Trust Co. v. Exchange National Bank*, 383 F.2d 694, 699 (10th Cir. 1967); *Nebraskans for Independent Banking v. Omaha National Bank*, 530 F.2d 755, 762 (8th Cir. 1976) (en banc), *rev'd and remanded for consideration of new state statute*, 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976) (per curiam); *Dakota National Bank & Trust Co. v. First National Bank & Trust Co.*, 554 F.2d 345, 355 (8th Cir. 1977).

■ In *First National Bank of Fairbanks v. Camp*, 465 F.2d 586, 594 (D.C.Cir.1972), *cert. denied*, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973), an objecting bank contended that "the opinion of the state supervisor as to the application of the state law constitutes an expression of official state policy that is as binding on the Comptroller as any other provision of the 'statute law of the state,' 12 U.S.C. § 36(c)." In rejecting this argument the court reasoned as follows:

> The purposes of Section 36(c) lead us to a similar result where we are faced with a conflict in which the state supervisor protests and the Comptroller approves a national bank branch application upon what we find to be a sound interpretation of federal and state law. The "competitive equality" of Section 36(c) is an equality of opportunity for expansion. Under its provisions the state statutory restrictions on branching were intended by Congress to apply equally to state supervisors in approving branches for state banks and to the Comptroller in approving branches for national banks. To accept the appellant's view would be to impose the additional restraint on national banks of a veto power in the hands of the state supervisor.
>
> \*   \*   \*   \*   \*   \*
>
> Both the statutory language of Section 36(c) and the competition component of the doctrine of "competitive equality" require that neither state nor federal administrator be empowered to veto branch authorizations of the other. The state

supervisors apply their state statutes in evaluating state bank branch applications wholly independently of any federal supervision, and we hold that the Comptroller may similarly apply those same state statutes in evaluating national bank branch applications independently of control by the opinions of the state supervisor.

> This interpretation satisfies the requirements of Section 36(c) and its underlying principle of competitive equality. Both the state supervisor and the Comptroller are bound to follow the state branching statute; it is the language of that statute that controls. Neither state nor federal administrators may circumvent its dictates by unsound opinion or practice. State opinions interpreting their branching laws are to be considered by the Comptroller, but whether they are to be followed depends upon their conformance with the "statute law of the state in question." The Comptroller's obligation is to weigh each branch application against the standard imposed by the statute law of the state, and to deny the application if that standard is not met.

*Id.* at 596–97 (footnote omitted).

A similar view was expressed in *State ex rel. Edwards v. Heimann*, 633 F.2d 886, 890 (9th Cir. 1980), where the court stated:

> In determining whether to approve national bank branch applications, the Comptroller must consider all relevant state laws and comply with any requirements established by state statutes. *E.g., First Bank & Trust Co. v. Smith*, 545 F.2d 752, 752–53 (1st Cir. 1976) *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *Hempstead Bank v. Smith*, 540 F.2d 57, 59–60 (2d Cir. 1976). The Comptroller makes an independent interpretation of the state law. *E.g., First National Bank of Fairbanks v. Camp*, 465 F.2d 586 (D.C.Cir.1972) *cert. denied*, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). The Comptroller is not bound by a state agency's interpretation of the state law, nor by the opinion of the state banking supervisor that no state bank could establish a branch under the same circum-

stances. *E.g., First National Bank of Fairbanks, supra* at 593–596. If the interpretation by the Comptroller is consistent with federal and state statutory restrictions, the contrary opinion of the state Supervisor is not a bar to the Comptroller's approval of the national banks' applications. *Id. Cf. Independent Bankers of Oregon v. Camp,* 357 F.Supp. 1352 (D.Or.1973) (state supervisor's interpretation of state law regarding branch banking is at least entitled to respect and consideration in determining whether national banks may open branch in state).

### C.

The district court found the language of KRS 287.180(2) to be clear and unambiguous. All parties agree, though the two sides contend for different meanings of the "clear" language and no Kentucky court has construed KRS 287.180(2). Since the statute is not ambiguous and there has been no "consistent and continued construction" of it by state administrative officers, the reasoning of *Lincoln Bank & Trust Co., supra,* 383 F.2d at 699, offers no guidance. ("The consistent and continued construction of an ambiguous state statute . . . by administrative officers of the state is entitled to great weight and will not ordinarily be overturned by a contrary judicial interpretation.") Here the state agency charged with enforcement of the statute rendered diametrically opposed interpretations as applied to the facts of this case. Counsel for the state Department of Banking and Securities originally advised the Comptroller orally that First National's proposed branch would be permitted under KRS 287.180(2). Within two weeks the same state official wrote that his earlier position had been "in error." Though there were references in this letter to the later opinion's being consistent with the Department's past position, no previous administrative rulings or opinions were cited or supplied.

The Comptroller's interpretation of the statute is not contrary to any judicial construction or consistent state administrative application of its provisions. A conflicting official interpretation exists only in the fact that the Commissioner has sided with American Fidelity in this particular case, urging that the Comptroller's interpretation is erroneous as a matter of law. In this situation we believe the proper approach is that set forth in *First National Bank of Fairbanks v. Camp* and *State ex rel. Edwards v. Heimann.* The Comptroller was required to make an independent determination of the meaning of the applicable state law. If this interpretation may be upheld on the basis of the language of the statute, the fact that a state agency or state administrator reads it differently is not controlling.

We conclude that the district court properly upheld the Comptroller's interpretation of KRS 287.180(2). The language of the statute controls. KRS 287.180(2) permits a bank to establish a branch within the city of its principal office. The state administrator may not exercise a veto over First National's application by means of an unsound interpretation of the statutory language. The policy of "competitive equality" was served by the Comptroller's decision since a state bank situated similarly to First National would be permitted to establish a branch in the Knox County area of Corbin.

The motion for certification is denied, and the judgment of the district court is affirmed.