Nancy **LOZADA,** Bob **Warren,** A.D. **Christian** and Jeanne **Uwamaliya,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**DALE BAKER OLDSMOBILE, INC.,** a Delaware corporation, d/b/a Dale Baker Kia, d/b/a Dale Baker Suzuki, d/b/a Fresh Start Auto Center, and d/b/a National Fleet Liquidators of Michigan; and CFC–Consumer Finance Corporation, f/k/a Consumer Finance Corporation, a Virginia corporation, Defendants.

No. 1:99–CV–620.

United States District Court,
W.D. Michigan,
Southern Division.

March 8, 2001.

John E. Anding, Drew, Cooper & Anding, Phillip C. Rogers, Grand Rapids, MI, for plaintiffs.

Michael D. Wade, Garan, Lucow, Miller & Seward, PC, David N. Campos, William

K. Holmes, Warner, Norcross & Judd LLP, Grand Rapids, MI, for defendants.

William K. Holmes, Warner, Norcross & Judd LLP, Grand Rapids, MI, for CFC–Consumer Finance Corporation, a Virginia corporation fka Consumer Finance Corporation, defendant.

### *OPINION RE DEFENDANTS' MOTION IN LIMINE*

HILLMAN, Senior District Judge.

This is an action brought pursuant to the federal Truth in Lending Act ("TILA") and various Michigan statutes: the Michigan Motor Vehicle Installment Sales Contracts Act ("MVISCA"), MICH.COMP.LAWS 566.302; the Motor Vehicle Sales Finance Act ("MVSFA"), MICH.COMP.LAWS 492.112; and the Michigan Consumer Protection Act ("MCPA"), MICH.COMP.LAWS 445.911. The matter presently is before the court on a motion in limine filed by defendant Dale Baker Oldsmobile, Inc. ("Dale Baker"). Dale Baker contends that plaintiffs are not entitled to money damages under Michigan law because the cited Michigan statutes provide no civil damages for the violations previously found by this court. Dale Baker therefore asks that the court issue an order precluding plaintiffs from presenting evidence in connection with Dale Baker's violations of the MVISCA, MVSFA and MCPA.

### I. *DISCUSSION*

#### A. *MVISCA*

The MVISCA, MICH.COMP.LAWS § 566.301–.302, provides that all motor vehicle retail installment sales contracts must be in writing, what items must be recited in that contract, and when a copy of the contract must be delivered to a buyer. Section 1 of the MVISCA, MICH.COMP.LAWS 566.301, contains only definitions. Section 2 of the act provides the entire text of what is required under the statute. *See* MICH.COMP.LAWS 566.302.

Paragraph one of section 2 provides a description of the mandatory requirements of all motor vehicle installment sales. The text of the paragraph is somewhat lengthy, although it contains only three sentences. This court previously granted summary judgment to plaintiffs on Dale Baker's liability under the first sentence of the first paragraph, which provides:

> Every retail installment sale of a motor vehicle shall be evidenced by an instrument in writing signed by the retail buyer *and a copy thereof shall be delivered to him by the retail seller at the time of its execution.*

*Id.* (emphasis added). The second sentence is not applicable to this matter, addressing the effect of an acknowledgment of delivery in an action by a successor to enforce the agreement. The third sentence of the first paragraph provides that the written instrument shall contain all of the agreements between the parties and lists seven items that must be recited in the contract:

> The written instrument shall contain all of the agreements of the parties made with reference to the subject matter of the retail installment sale and shall recite the following separate items as such and in the following order: (1) the cash price of the motor vehicle which is the subject matter of the retail installment sale; (2) the amount in cash of the retail buyer's down payments, whether made in money or goods or partly in money and partly in goods; (3) the unpaid balance of the cash price payable by the retail buyer to the retail seller, which is the difference between items 1 and 2; (4) the cost to the retail buyer of any insurance the retail seller has agreed to procure, if the retail seller has agreed to purchase the insurance and extend credit to the retail buyer for the price thereof and if the term of such insurance is

less than the contract period, the period of the coverage also shall be recited; (5) the principal balance owed on the retail installment contract, which is the sum total of items 3 and 4; (6) the amount of the finance charge; (7) the time balance owed by the retail buyer to the retail seller and the number of installment payments required and the amount and date of each payment necessary finally to pay the time balance, which is the sum total of items 5 and 6.

*Id.*

Paragraphs two and three address certain additional requirements concerning a seller's agreement to purchase insurance, as well as specific remedies for the failure to provide the insurance policy as promised. Neither paragraph is directly relevant to the present issue.

The fourth and final paragraph of the section provides the general remedy provision for violations of the act:

Under a written instrument evidencing a retail installment sale which does not substantially comply with the requirements of this section, the seller shall not be entitled to recover, collect or retain that part of the obligation which represents the finance charge and the buyer shall not be liable therefor.

MICH.COMP.LAWS 566.302, ¶ 4. Dale Baker Olds contends that the cited remedy provision does not allow for the recovery of finance charges by plaintiffs in this case because the provision applies solely to instances in which sellers have failed to provide the mandatory recitations required by the third sentence of paragraph one.

In support of its contention, Dale Baker makes a two-pronged argument. First, it asserts that it has "substantially complied" with the statute because it fully disclosed all of the seven items in the third sentence of the statute and that its sole violation was its "minor" failure to provide a copy of the written instrument for some days fol-lowing execution of the contract. In response, plaintiffs correctly note that this court already has concluded that Dale Baker's conduct did not amount to a mere "technical" violation of the TILA and that the violation of an express requirement of the Michigan statutes, including the MVISCA, must be considered to be substantive.

A conclusion that the violation is "substantive" is, of course, not a conclusion that the violation was "substantial." Nevertheless, Dale Baker's arbitrary division of the statutory requirements into important and unimportant parts is not supported by the language of the statute. Indeed, it is difficult to understand how Dale Baker's intentional failure to supply a copy of the agreement at the time of execution may be described as "insubstantial" when that intentional failure was in direct contravention of the express requirements of the first sentence of the statutory language. It is equally plausible to say that a contract that did not include one of the statutorily required items but which did not affect the total amount owed or the amount financed is in substantial compliance, even if the exclusion is intentional.

Under Michigan law, the scope of a statutory "substantial compliance" provision requires an analysis of the "overall purpose" of the statute. *See Northern Concrete Pipe, Inc. v. Sinacola Companies—Midwest, Inc.*, 461 Mich. 316, 321–22, 603 N.W.2d 257 (1999). The caption of the section is entitled, "Contract, contents; delivery of copy of contract and insurance policy to buyer." That caption reflects all of the provisions governing the making and enforcement of such contracts under the MVISCA (including delivery), not just the provisions governing the contents of those contracts. Moreover, where the legislature has expressly and unequivocally stated what is required under the statute,

it is unreasonable for this court unilaterally to declare that an intentional violation of one part of that statute is insubstantial. *See Northern Concrete Pipe*, 603 N.W.2d at 260 ("As an exception, [the substantial compliance] provision should not be interpreted to nullify altogether the general rule that statutes should be interpreted consistent with their plain and unambiguous meaning.").

In *Northern Concrete Pipe*, the Michigan Supreme Court considered whether a substantial compliance exception applied to the Construction Lien Act. The court held that where a provision is clear and unambiguous, no further interpretation is permitted and full compliance is required. *Id.* at 260. The court stated that when a statute specifically identified a time for filing a lien, the notion of "substantial compliance" could not be applied to extend that statutory period of time.

■ In the instant case, as in *Northern Concrete Pipe*, the statute unambiguously sets the time for delivery and a seller may not unilaterally extend that time and yet be held to have substantially complied with the statute. Pursuant to *Northern Concrete Pipe*, therefore, delivery of a copy within a few days or weeks after signing does not constitute "substantial compliance" with a statute that sets the time for delivery.

Dale Baker next argues that in order to read the entire statute consistently, the remedy paragraph must be interpreted to apply only to the seven required recitations set forth in sentence three of paragraph one. Dale Baker first observes that pursuant to the fourth item of the third sentence of paragraph one, a retail installment contract must recite the cost of insurance coverage: "(4) the cost to the retail buyer of any insurance the retail seller has agreed to procure, if the retail seller has agreed to purchase the insurance and extend credit to the retail buyer for the price thereof and if the term of such insurance is less than the contract period, the period of the coverage also shall be recited. . . ." Dale Baker then notes that paragraph three of the statute provides a specific remedy when a seller who has agreed to obtain insurance fails to mail a policy of insurance to the buyer within 25 days of the making of the contract. That remedy provides that if the policy is not mailed within 25 days, the seller is not entitled to collect or retain the sum stated in the contract for payment of insurance. By analogy, Dale Baker argues, in providing a specific remedy for the failure to meet the obligation to mail the policy, the legislature demonstrated its intent to punish separately violations of the statute that are not failures to disclose as required in paragraph one. In other words, Dale Baker suggests that the structure implies that the legislature did not intend paragraph four penalties to apply to all violations of the statute.

I am not persuaded by Dale Baker's argument. Even if the structural argument were accepted, it would distinguish a penalty imposed for conduct prohibited outside of paragraph one from that prohibited by paragraph one. Moreover, the requirement that the insurance policy be mailed within 25 days of the making of the retail installment contract is contained in paragraph three, as is the cited remedy. The structure of the statute, therefore, does not imply a distinction between the various requirements of paragraph one.

In addition, the insurance provision is entirely distinct from the other requirements of the act. A seller could fully comply with all of the requirements of paragraph one in the making of a retail installment contract and complete a lawful installment sale, including the signing of the contract and the delivery of that contract to the buyer. Paragraph three of the

statute simply imposes a specific additional requirement related to the *execution* of a lawful contract under the act. It provides that the seller who has agreed to purchase insurance for the retail buyer must actually deliver a policy within 25 days or he shall be prohibited from collecting or keeping the insurance cost set forth in the agreement.

In sum, I am not persuaded that the insurance paragraph is helpful in understanding whether the remedy provision of paragraph four applies to all violations of paragraph one.

As a result, the real issue is how to read paragraph four based on the language of the paragraph itself. As I have previously mentioned, the paragraph states:

> Under a written instrument evidencing a retail installment sale which does not substantially comply with the requirements of this section, the seller shall not be entitled to recover, collect or retain that part of the obligation which represents the finance charge and the buyer shall not be liable therefor.

Dale Baker asks this court to read the provision as providing a remedy only where the "written instrument ... does not substantially comply with the requirements of this section...." In other words, Dale Baker asks that the court read the modifying phrase of "which does not substantially comply" as modifying "written instrument." Because the written instrument complies with the statute, Dale Baker contends that the remedy of paragraph four may not be used to address violations of the delivery requirement.

However, the "substantial compliance" language is better read as modifying the noun it most immediately follows, that is "retail installment sale." In other words, the relevant phrase becomes "a retail installment sale which does not substantially comply with the requirements of this section...."

I am persuaded that this second construction represents the least fragmented interpretation of the language itself. In addition, without this reading, not one, but two, express requirements of paragraph one of the statute are rendered unenforceable: (1) the requirement that a buyer be given a copy of the agreement at the time of execution; and (2) the requirement that the instrument contain all of the agreements of the parties. In fact, if the phrase modifies "written instrument," the requirement that the instrument be signed by the buyer would be evident on the face of the agreement and therefore could be enforced, while the second part of the same sentence (the requirement that the buyer be given a copy) could not be enforced. Nothing in the structure of the statute suggests that any requirement contained in part of paragraph one or in part of a particular sentence is more or less significant than any other.

Moreover, a holistic reading of the remedy provision suggests that this is the meaning intended. The language prohibits under certain circumstances the collection, recovery or retention of finance charges owed to a seller under a written instrument. Hence, the language "under a written instrument" is included in the provision solely to describe the circumstances under which the seller would be seeking to enforce an obligation. The statute then provides that the seller is not permitted to recover under such instrument whenever the retail installment sale itself does not substantially comply with the requirements of the section.

Dale Baker argues, however, that prior Michigan cases support its reading of the MVISCA and reflect other courts' conclusions that the Michigan legislature does not intend to seriously punish disclosure

and contract delivery requirements. First, Dale Baker relies upon *Michigan Loan Ass'n v. Cahill,* 253 Mich. 358, 235 N.W. 182 (1931). In *Cahill,* the Michigan Supreme Court analyzed Pub. Acts 1921, No. 317 §§ 13 and 14, the predecessor to the Regulatory Loan Act of 1963. Section 13 of the act limited the rate of interest a lender could charge and further provided that "[i]f interest or charges in excess of those permitted by this act shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever." *Cahill,* 253 Mich. at 360–61, 235 N.W. 182 (quoting P.A. No. 317, § 13). Section 14 of the statute required the lender to furnish to the borrower a particular statement describing the loan. The Michigan Supreme Court declined to apply the penalty provision contained in section 13 to the disclosure requirement of section 14.

*Cahill* does not hold that statutory disclosure requirements could under no circumstances trigger a significant penalty, only that the legislature did not so provide in the statute under review in *Cahill.* The statute in *Cahill,* on its face, provided a remedy for situations in which "interest or charges in excess of those permitted" had been charged. The statute did not expressly provide the remedy for violations of another provision of the act. The court held that the language of the separate provisions precluded inferring a legislative intent to impose the penalties of section 13 for violations of section 14.

Here, in contrast, the remedy is contained in the very section of the statute that sets forth the legal requirement of delivery. The statute makes no distinctions between the various obligations contained in the same paragraph of the act. The legislature provides no indication that the remedy paragraph is limited to some but not all violations of section 566.302.

Given these striking distinctions between this case and *Cahill,* the reasoning of the decision entirely supports this court's conclusion that the remedy provision of paragraph four applies to all sales that do not substantially comply with the terms of the statute.

Similarly, in *Kansas City Life Ins. Co. v. Durant,* 99 Mich.App. 754, 298 N.W.2d 630 (1980), a case involving Michigan's usury law, the Michigan Court of Appeals declined to apply a remedy provision contained in one section of the statute, which governed the amount of allowable interest, to a second section of the statute, which governed disclosures to the borrower. In the instant case, in contrast, the remedy provision is contained in the very section requiring disclosures and, absent an interpretation that artificially distinguishes between statutory requirements, the remedy appears to govern all violations of the act. *Durant,* therefore, provides no authority for defendant's argument and is consistent with both *Cahill* and this court's decision.

Finally, Dale Baker repeatedly urges this court to consider the amount of money at stake in this litigation if finance charges are recoverable as damages. First, it is not the role of this court to consider either the wisdom or the severity of remedies established by the Michigan legislature. Second, Dale Baker does not appear to argue that the legislature did not intend to allow the imposition of such remedies for some violations of the statute. Instead, it argues that this court should consider some of the legislature's proscriptions under the statute to be serious and some to be unimportant. However, it is the province of the Michigan legislature to make such distinctions, distinctions which are not articulated in the provision itself.

█ For all these reasons, I am satisfied that pursuant to the language and structure of the MVISCA, plaintiffs are

entitled to recover finance charges as a remedy for Dale Baker's failure to deliver the contract at the time of execution as required by the section.

### B. *MVSFA*

The Motor Vehicle Sales Finance Act, MICH.COMP.LAWS § 492.101 to .137 contains numerous requirements regulating installment sales of motor vehicles, including provisions governing individual sales, licensure of sellers, and the rights of various parties to such transactions. Section 492.112, lists six separate requirements for motor vehicle installment contracts. Part (c) of section 492.112 states:

An exact copy of the installment sale contract shall be furnished by the seller to the buyer without charge at the time the buyer signs the contract. The buyer's copy of the contract shall contain the signature of the seller identical with the signature on the original contract.

*Id.* Section 492.112 contains no remedial provisions. Specific remedial entitlements are provided in various other sections of the statute. However, no broad general civil remedy is described for violations of the act.

Instead, the MVSFA contains a broad criminal penalty section for all willful violations of the act, which authorizes criminal sanctions, including imprisonment and fines. *See* MICH.COMP.LAWS § 492.137. The inclusion of section 492.137 implies that the legislature intended that the act would be largely enforced criminally and did not intend expansive civil penalties unless specifically authorized by other provisions.

Plaintiffs assert, however, that MICH. COMP.LAWS §§ 492.131 permits recovery of finance charges for violations of other parts of the act, specifically for violations of MICH.COMP.LAWS § 492.112(c). Section 492.131 states in relevant part:

Whenever in an installment sale contract under this act the seller or any subse-

quent holder has charged, contracted for, collected, or received from the buyer prohibited costs or charges in connection with the contract, all the costs and charges in connection with the contract, other than for insurance, shall be void and unenforceable and any amounts paid by the buyer for such costs and charges, other than insurance, shall be applied on the principal of the contract.

MICH.COMP.LAWS § 492.131(d). Plaintiffs argue that all charges contained in an installment contract that is not delivered must be considered "prohibited" charges within the meaning of the act. Accordingly, plaintiffs assert that they are entitled to recovery of finance charges.

The court concludes that plaintiffs' construction of section 492.131(d) is not reasonable. The caption of the section specifically refers to "prohibited charges." Subsection (a) of the provision details the only charges a seller can include in a vehicle installment sales contract:

A licensee under this act shall not charge, contract for, collect, or receive from the buyer, directly or indirectly, any further or other amount for costs, charges, examination, appraisal, service, brokerage, commission, expense, interest, discount, fees, fines, penalties, or other thing of value in connection with the retail sale of a motor vehicle under an installment sale contract in excess of the cost of insurance premiums, other costs, the finance charges, refinance charges, default charges, recording and satisfaction fees, court costs, attorney's fees, and expenses of retaking, repairing, and storing a repossessed motor vehicle which are authorized by this act.

*Id.* Given that subsection (a) is a prohibition on all charges not expressly authorized under the section, the "prohibited costs or charges" language of subsection (d) must be understood to refer to charges

imposed in violation of subsection (a). The conclusion is buttressed by the use of identical language in both subsections. Subsection (a) states that the licensee shall not "charge, contract for, collect, or receive from the buyer" certain costs or charges. Subsection (d) provides a penalty for the seller having "charged, contracted for, collected, or received from the buyer" the prohibited costs or charges.

■ In sum, I conclude that MICH.COMP. LAWS § 492.131(d) does not permit recovery of finance charges for violations of section 492.112(c). *Cf. Cahill*, 235 N.W. at 184 (penalty contained in one provision of act does not apply to separate provision); *Durant*, 298 N.W.2d at 633. Instead, section 492.131(d) provides a penalty only for the attempt to include additional fees or charges not permitted by MICH.COMP.LAWS § 492.131(a). Only by unreasonably stretching the words "prohibited charges" may this court interpret subsection (d) as a remedy for a breach of MICH.COMP.LAWS 492.112(c).

For all I these reasons, I conclude that plaintiffs are not entitled to recover damages in the form of finance charges for violations of the MVSFA. Evidence of such damages, however, is relevant to claims under the MVISCA. As a consequence, although not relevant to the MVSFA, evidence of finance charges is admissible and relevant to plaintiffs' proof of damages under other state law.

### C. *MCPA*

Under the Michigan Consumer Protection Act, MICH.COMP.LAWS § 445.911, statutory damages are permitted for individual actions, but are not authorized in class actions under the statute:

> Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

MICH.COMP.LAWS § 445.911(2). Defendant contends that no damages are recoverable by these class plaintiffs on the facts of this case.

In support of its argument, defendant first asserts that named plaintiffs have admitted at deposition that they suffered no actual damages. I disagree. The named plaintiffs unquestionably were unable to testify to a specific amount of losses. However, several testified that they were personally affected by not receiving documents to which they were legally entitled. Plaintiff Warren testified that he had difficulty getting his vehicle title in order because he did not have the documents at the time of signing. Plaintiff Christian testified that he was injured by possessing a vehicle for which he had no proof of ownership. I find nothing in the deposition testimony amounting to an admission that plaintiffs experienced no injury. As a result, plaintiffs' testimony itself does not preclude the admission of damage evidence.

Dale Baker next asserts that "actual damages" as contemplated by the MCPA includes only direct pecuniary losses. The MCPA does not define "actual damages" under the act. This court therefore must interpret the meaning of the term under the statute.

■ In determining the meaning of a statutory term, the court must assess the intent of the state legislature. In so doing, this court is bound by the construction of the state statute given by the highest court in the state. *See Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The federal courts also are bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the

issue differently. *See Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir.1988).

■ The Michigan Supreme Court has stated that "[w]hen determining legislative intent, statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished." *Lorencz v. Ford Motor Co.,* 439 Mich. 370, 377, 483 N.W.2d 844 (1992) (quoting *Wills v. Iron Co. Bd. of Canvassers,* 183 Mich.App. 797, 801, 455 N.W.2d 405 (1990)). The court is obligated to look to the object of the statute, the harm it is designed to remedy, and then apply a reasonable construction that best accomplishes the purposes of the statute. *See Marquis v. Hartford Accident & Indem.,* 444 Mich. 638, 644, 513 N.W.2d 799 (1994).

Michigan courts have held that the "clear legislative intent of the MCPA is to protect consumers in the purchase of goods and services." *Forton v. Laszar,* 239 Mich.App. 711, 715, 609 N.W.2d 850 (2000). The MCPA is a remedial statute "designed to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals." *Id.; see also Price v. Long Realty, Inc.,* 199 Mich.App. 461, 470–71, 502 N.W.2d 337 (1993).

No Michigan court has defined what damages are recoverable as "actual damages" under the MCPA. However, in *Phillips v. Butterball Farms Co., Inc.,* 448 Mich. 239, 251 n. 32, 531 N.W.2d 144 (1995), the Michigan Supreme Court has held that actual damages in tort cases generally include full compensatory damages, including mental distress and anguish. *Id.* (quoting *Veselenak v. Smith,* 414 Mich. 567, 574, 327 N.W.2d 261 (1982)) (distinguishing *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628 (1984)) (holding that mental distress damages are not available for breach of an employment contract), and *Kewin v. Massachusetts Mutual Life Ins.*

*Co.,* 409 Mich. 401, 419, 295 N.W.2d 50 (1980) (holding that emotional distress damages are not available in an action for breach of contract unless it can be reasonably said that such damages were contemplated by the parties at the time that the contract was made). The *Phillips* court reasoned that tights arising from a breach of a private agreement, which sound in contract, are distinct from those arising from a breach of statutory duty, which sound in tort. *Phillips,* 531 N.W.2d. at 147. *See also Phinney v. Perlmutter,* 222 Mich.App. 513, 564 N.W.2d 532, 547 (1997) (applying *Phillips* to a fraud claim and holding that mental distress damages are recoverable in fraud cases whenever such damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated) (distinguishing on both facts and law *Pantelas v. Montgomery Ward & Co., Inc.,* 169 Mich. App. 273, 425 N.W.2d 782 (1988) (construing "actual damages" under the Michigan Pricing and Advertising Act ("PAA"), MICH.COMP.LAWS § 445.351, *et seq.*)).

■ I am persuaded that Michigan law permits the recovery of mental distress damages in cases under the MCPA when those damages "are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." As a result, the availability of mental distress damages ordinarily will be a question of fact for the jury to determine.

In the instant case, however, plaintiffs do not argue that they have suffered mental distress as a result of defendant's breach of statutory duty. Instead, they contend (as they earlier conceded on the record at the status conference held October 19, 2000) that actual damages are equal to the fruits of the deception under the MCPA; that is, actual damages are measurable by the amount of the finance

charges set forth in the agreements that Dale Baker wrongfully failed to deliver.

I disagree. Plaintiffs' theory of damages under the MCLA would eviscerate any ordinary understanding of the words "actual damages." The finance charge paid by every plaintiff was not incurred as a result of Dale Baker's failure to provide a copy of the contract. Instead, plaintiffs' argument broadly redefines "actual damages" to include a recovery that is more in the nature of a penalty. I find no authority for such a construction of the phrase "actual damages."

█ I therefore conclude that plaintiffs are not entitled to recover finance charges as a remedy for defendant's violations of the MCPA. However, as I previously have noted, evidence of the amount of finance charges nevertheless is relevant to plaintiffs' claim under the MVISCA. As a result, defendant's motion in limine to preclude introduction of evidence of finance charges is denied.

Dale Baker also argues that plaintiffs are not entitled to recover attorney fees in a class action under the MCPA. While the MCPA provides for the recovery of attorney fees, the phrasing of section 445.911(2) appears to exclude recovery of attorney fees in class actions brought under the MCPA. At oral argument, plaintiffs asserted that attorney fees are available from a common fund.

█ The court, however, need not decide the issue at this time. Evidence of reasonable attorney fees clearly is relevant to an award of attorney fees under TILA. Moreover, Dale Baker's motion is one in limine, designed to exclude certain evidence from consideration by *the jury*. The issue of attorney fees, however, is for the court to determine after any trial on damages. *See Jordan v. Transnational Motors, Inc.*, 212 Mich.App. 94, 537 N.W.2d 471, 473 (1995) (attorney fees awarded upon petition to court following jury ver-

dict in favor of consumer); *see also Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich.App. 292, 463 N.W.2d 261, 263 (1990). Attorney fees therefore will not be a subject for proof to the jury, and plaintiff has not demonstrated any intent to put in such proofs at trial.

## II. *CONCLUSION*

In sum, although damages in the form of finance charges are not available under the MVSFA or the MCPA, they are available under the MVISCA. As a result, defendant's motion in limine to exclude evidence of damages under the Michigan statutes is **DENIED.**

## *ORDER*

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendant Dale Baker's motion in limine to exclude evidence of damages under the Michigan statutes (docket # 130) is **DENIED.**