Christine **DAENZER**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**WAYLAND FORD, INC., Defendant.**

No. 1:01–CV–133.

United States District Court, W.D. Michigan, Southern Division.

March 15, 2002.

John E. Anding, Thomas V. Hubbard, Drew, Cooper & Anding, Grand Rapids, MI, Phillip C. Rogers, Grand Rapids, MI, for Plaintiff.

Blake D. Crocker, Early, Lennon, Crocker & Bartosiewicz, PC, Michae D. Wade, Aaron D. Wisely, Garan, Lucow, Miller & Seward, Grand Rapids, MI, for Defendant.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings.[1] The Court will grant in part and deny in part Defendant's Motion.

---

1. The Court considered Defendant's Motion for Judgment on the Pleadings at Dkt. No. 85, which was filed as an amended version of Dkt. No. 32. Dkt. No. 85 was submitted to the Court after the Court noticed a problem in Dkt. No. 32, indicating either a misplaced or missing page. For clarity in the Court's dock-

This matter is also before the Court on Defendant's Motion to Certify to the Michigan Supreme Court or, Alternatively, to Decline Supplemental Jurisdiction. The Court will deny Defendant's Motion.

## I. Standard of Review and Applicable Federal Rules as to Motion to Dismiss

Defendant Wayland Ford, Inc. makes a motion to dismiss this case for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The allegations of the complaint must be construed in the light most favorable to the plaintiff. *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 446 (6th Cir. 2000) (citations omitted).

The rules generally require only a "short and plain statement of the claim" and not detailed allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The complaint, however, "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quotations omitted) (emphasis in original). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory,* 220 F.3d at 446. A district court's ruling on a Rule 12(b)(6) motion is subject to *de novo* review. *Id.* at 445–46 (citations omitted).

The Court will make its ruling on dismissal of Plaintiff's claims without oral argument, having found that the issues are fully addressed by the parties in the briefing. *See* L. Civ. R. 7.2(d).

## II. Facts

Plaintiff Christine Daenzer claims that Defendant Wayland Ford, a car dealership, violated federal and state law when it failed to give her copies of certain paperwork containing cost-of-credit disclosures prior to entering into a sales contract. Plaintiff claims that it is or was the dealership's practice to purposely refuse to give consumers this information prior to the extension of credit, and the Court has previously certified a class action in this matter.

Specifically, Plaintiff alleges that Defendant purposely fails to provide a copy of the contract to the car buyer until Defendant finds a third-party finance contract to whom Defendant can sell the retail installment sales contract (RISC). Plaintiff alleges that this practice serves to avoid federal and state laws disclosing to the buyer the true cost of the credit prior to the point of sale. Plaintiff also alleges that in the event that Defendant cannot find a finance company to whom it can sell the RISC, Defendant refuses to honor its contract with the buyer, even though Defendant is contractually bound. Defendant allegedly demands that the buyer sign additional contracts or pressures the buyer to return the vehicle and presumably agree to cancel the contract. Plaintiff asserts that this practice is facilitated by Defendant's refusal to give the buyer a copy of the RISC at the time of the sale, since the buyer is unlikely to understand or pursue his or her rights and has no documentation proving the terms of their bargain that existed at the time of the sale.

et, Dkt. No. 32 is substantively the same as

Dkt. No. 85.

Even if the consumer requests a copy, Plaintiff alleges that Defendant's practice is to deny the request. Plaintiff alleges that she was not given a copy of the RISC when she left the dealership with her car and when she phoned the Used Car Finance and Insurance Manager Terry Maddison three days later to request a copy, she was told that she could have a customer copy once her "loan had been funded." Six days after that, on February 8, 2001, Plaintiff returned to the dealership where she was told that the finance company would not purchase her RISC from Defendant under the terms to which Plaintiff and Defendant agreed. Plaintiff was informed that she "would have to" sign a second RISC with new terms that were acceptable to the third-party finance company. When Plaintiff asked again for a copy of the first RISC she signed, Mr. Maddison produced a computer-generated version of the contract that he asserted contained the same terms as the first RISC that Plaintiff signed, but Mr. Maddison did not produce a copy assertedly generated from the original document signed by Plaintiff.

Plaintiff further alleges that Mr. Maddison affixed a number of Post–It notes with additional contract terms to the computer-generated contract that he asserted was identical to the one that Plaintiff originally signed. Plaintiff was told that these additional terms on the Post–It notes would be "typed in later." Plaintiff signed this document with the Post–It notes affixed to it. The additional Post–It terms were allegedly typed onto the contract and this second RISC was purchased by the finance company. Again, Plaintiff was not given a copy of the second RISC on February 8, 2001.

Plaintiff claims that Defendant has violated a federal statute, the Truth in Lending Act (TILA). See 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. Plaintiff also claims that Defendant's alleged conduct and practice violates Michigan law, specifically the Michigan Motor Vehicle Installment Sales Contract (MVISCA), Mich. Comp. Laws § 566.302; the Michigan Motor Vehicle Sales Finance Act (MVSFA), Mich. Comp. Laws § 492.112 *et seq.;* the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.903; and the Michigan Credit Reform Act (MCRA), Mich. Comp. Laws § 445.1852(f).

Defendant seeks dismissal of all of Plaintiff's claims for failure to state a claim upon which relief may be granted. The Court will examine each of the claims in turn.

### III. Analysis of Defendant's Motion for Judgment on the Pleadings

### A. Plaintiff's Truth in Lending Act Claim

The Truth in Lending Act (TILA) requires that creditors deliver cost-of-credit disclosures, in some form that the consumer may keep, prior to when a customer enters into a sales contract. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. Plaintiff asserts that her complaint alleges TILA violations, specifically violations of §§ 1638(b)(1), 1638(a)(3),(4),(5) and (6). Defendant asserts that Plaintiff cannot recover statutory damages for violations of § 1638(b)(1), only actual damages, and Plaintiff has not claimed any actual damages. By implication, the Court assumes that Defendant would argue that Plaintiff has not pled and cannot plead violations of § 1638(a)(3),(4),(5) or (6). The Court finds that the language of TILA does permit recovery of statutory damages for violations of § 1638(b)(1), but also finds that §§ 1638(a)(3),(4),(5) and (6) are inapplicable to this case.

TILA provides for damages as follows:

*Except as otherwise provided in this section,* any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to the sum of—[actual and statutory damages.]

. . . *In connection with the disclosures referred to in section 1638 of this title,* a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title . . . .

15 U.S.C. § 1640(a) (emphasis added). Defendant argues that this statute does not permit recovery of statutory damages for violations of § 1638(b). In a matter factually identical to this one, with only differing parties, before the Western District of Michigan, the Court found that the statute excludes statutory recovery only for those "disclosure"-related violations of § 1638 not enumerated. *Lozada v. Dale Baker Oldsmobile, Inc.,* 145 F.Supp.2d 878, 885–89 (W.D.Mich.2001) (*Lozada III* ) (Hillman, J.). Thus, the statute permits recovery for violations of § 1638(b), since nothing in that part is "disclosure"-related. *Id.* This Court agrees with Judge Hillman's assessment as to this issue and therefore does not find it necessary to determine whether failure to comply with § 1638(b)'s timing and other requirements means that there has been a failure to disclose anything at all, *i.e.,* meaning a violation of § 1638(b) results in violations of § 1638(a)(3)-(6).

▮▮ The *Lozada III* analysis speaks for itself, but this Court will highlight the points that it found particularly persuasive. First, the statute presumptively makes statutory damages available unless otherwise excepted. *Lozada III,* 145 F.Supp.2d at 886. Exceptions to broad statutory lan-

guage must be narrowly construed, not broadly construed, in order to avoid undermining the operation of the general principle. *Id.* Moreover, the Truth in Lending Act is a remedial statute and should be construed in favor of the consumer. *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1040 (6th Cir.1984).

The Seventh Circuit came to the opposite conclusion as the *Lozada III* Court, but did so on the basis of its holding that § 1640(a) "says that statutory damages are available 'only' for violations of enumerated subsections and rules." *Lozada III,* 145 F.Supp.2d at 886–87 (quoting *Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 992 (7th Cir.2000)). This was not an apt holding, though:

> The statute, however, does not say that. Instead, it says that within recited subsections, "only" certain provisions are eligible for statutory damages. Thus, the exception provides a limitation on statutory damages only as described and only within the listed subsections. Applying the general rule limiting exceptions so as not to eviscerate the general rule, violations of sections not mentioned remain subject to statutory damages under the general provision. For example, violations of §§ 1631 (Disclosure requirements), 1632 (Form of disclosure), and 1639 (Requirements for certain mortgages) all place requirements on creditors but are not specifically mentioned in § 1640(a). No basis exists for concluding that these unmentioned sections are excluded from the presumptive language of § 1640(a) authorizing statutory damages.

*Lozada III,* 145 F.Supp.2d at 887.

▮▮ The Court therefore concludes that § 1640(a) permits recovery of statutory damages for violations of § 1638(b)(1) because the subsection is not one of the "disclosures referred to in section 1638,"

and those disclosures not enumerated are the only portions of the statute for which statutory damages are not available. Therefore, Defendant's motion to dismiss Plaintiff's TILA claim will be denied.

## B. Plaintiff's Michigan Motor Vehicle Installment Sales Contract Claim

### 1. Defendant's Argument that MVISCA Remedy Provision Does Not Apply to This Case

Plaintiff alleges that Defendant's practices violate the Michigan Motor Vehicle Installment Sales Contracts Act (MVISCA), Mich. Comp. Laws § 566.302. Specifically, MVISCA requires:

> Every retail installment sale of a motor vehicle shall be evidenced by an instrument in writing signed by the retail buyer and a copy thereof shall be delivered to him by the retail seller at the time of its execution.

> \* \* \* \* \* \*

> Under a written instrument evidencing a retail installment sale which does not substantially comply with the requirements of this section, the seller shall not be entitled to recover, collect or retain that part of the obligation which represents the finance charge and the buyer shall not be liable therefor.

Mich. Comp. Laws § 566.302, section 2, at ¶¶ 1, 4. Defendant argues that Plaintiff's allegations do not support a claim for the remedy of Plaintiff's non-payment of the finance charge.

■ Defendant asserts that "which does not substantially comply" modifies "written instrument," meaning that if the actual contract contained all or "substantially" all of the items that MVISCA mandates that it contain, Plaintiff cannot obtain the remedy of Defendant's inability to collect or retain the finance charge under their con-

tract. In other words, even if Defendant failed to give Plaintiff a copy of the contract at the time of its execution as required by MVISCA, the remedy is not available to Plaintiff.

*Lozada II* rejected this argument and found that "substantially comply" modifies the phrase immediately preceding it, "a retail installment sale," meaning that Plaintiff could obtain the MVISCA remedy if Defendant's alleged failure to give her a copy of their contract to keep at the time of the contract's execution did not constitute "substantial compliance" with that requirement. *Lozada v. Dale Baker Oldsmobile,* 136 F.Supp.2d 719, 724 (W.D.Mich. 2001) (Hillman, J.) (*Lozada II* ). In effect, the "sale" itself is not in "substantial compliance" with the law if the contract is not delivered at the time of its making.[2]

■ This construction of the remedy paragraph in the MVISCA is consistent with the principle of statutory construction that a modifying phrase ordinarily modifies the noun and modifiers immediately preceding it. *Lozada III,* 145 F.Supp.2d at 894 (citing *Sun Valley Foods Co. v. Ward,* 460 Mich. 230, 596 N.W.2d 119, 123 (1999)). There is no indication on the face of the text that the Michigan Legislature intended to modify "written instrument." In fact, this construction gives effect to all of the requirements of the statute, whereas Defendant's asserted meaning would leave several sections of the statute unenforceable in the absence of an indication that some of the requirements were considered more important than the others. *Lozada II,* 136 F.Supp.2d at 724. The fact that the penalty may seem harsh to Defendant is not a good argument that the Michigan Legislature did not intend to provide for the penalty in the case of violation of

---

**2.** Defendant is correct that Judge Hillman's analysis and holding is not binding on this

Court. But the Court is strongly persuaded by his reasoning.

its statutory requirements in view of the statute's text which indicates otherwise.

Defendant cites two reported Michigan cases interpreting other statutes in support of its position that the Michigan legislature did not intend to seriously punish contract delivery requirements generally. *See Kansas City Life Ins. Co. v. Durant,* 99 Mich.App. 754, 298 N.W.2d 630 (1980); *Michigan Loan Ass'n v. Cahill,* 253 Mich. 358, 235 N.W. 182 (1931). The Court, however, does not find these cases at all applicable to this matter or helpful to interpreting the MVISCA.

First, relying on other statutes to speculate on what the Michigan Legislature did not want to punish seriously when it passed the statute at issue is not a particularly accurate way to decide what the statute at issue means. Second, the analysis of the other two statutes in *Lozada II* was very thorough, and the Court determined that those statutes were so structurally dissimilar from the statute at issue as to render any comparisons to them useless in this inquiry. *See Lozada II,* 136 F.Supp.2d at 724–725.

The Court has also reviewed the Opinion of Muskegon County Circuit Judge James M. Graves, Jr., who decided that the MVISCA's remedy was not available to buyers who did not receive a copy of the contract to keep at the time of the sale because that reading of the statute would create an unjust and unreasonable result that the Michigan Legislature surely did not intend. *See Ruud v. Betten–Friendly Motors Co.,* 01–40670–CP, Muskegon County Circuit Court, May 15, 2001.[3] In the end, however, this Court must respectfully disagree with Judge Graves' decision.

Judge Graves observed that, "The object or purpose of the statute is to regulate retail installment sales contracts covering motor vehicles. It is designed to protect consumers by requiring formal written disclosure of the financial terms and credit costs of the purchase of motor vehicles." *Ruud,* 01–40670–CP, at 4. Judge Graves determined that the legislature limited the remedy to only those cases where "substantial compliance" with the requirements of the statute was not achieved in order to serve these purposes while preventing a truly minute, accidental error on the part of a dealership from giving buyers the windfall of not having to pay finance charges on a car loan. *See id.* at 4.

Judge Graves suggested that awarding the remedy to any buyer who did not receive a copy of the contract at the time of sale would not be requiring "substantial compliance" with the delivery requirement, but would actually be requiring "strict compliance." *See Ruud,* 01–40670–CP, at 4–5. He gave the example of a distracted dealership clerk who inadvertently places the customer's copy of the contract aside on a desk while meeting with the customer, but forgets to give it to the customer and mails it to the customer the next day. *See Ruud,* 01–40670–CP, at 4–5. He assumed that such action would not be "substantial compliance" with the delivery requirement. *Id.* at 4. This concern that led Judge Graves to conclude that the penalty provision could not have applied to the delivery requirement because Judge Graves believed that such a result would not be consonant with the statute's intent. *Cf. id.* at 5. The text of the statute, however, is logically read to apply the penalty to all of the required aspects of a retail installment sale, not just those required elements of the contract.

Moreover, Judge Graves' extreme example is nothing like the case at bar. Plaintiff alleges that Defendant purposely fails to provide a copy of the contract to the buyer until Defendant finds a third-party

---

**3.** This Opinion can be found at Dkt. No. 31, at Ex. 2.

finance contract to whom Defendant can sell the retail installment sales contract (RISC). Plaintiff alleges that this practice serves to avoid federal and state laws disclosing to the buyer the true cost of the credit prior to the point of sale. Further, Plaintiff alleges that in the event that Defendant cannot find a finance company to whom it can sell the RISC, Defendant refuses to honor its contract with the buyer and demands that the buyer sign additional contracts or requires the buyer to return the vehicle. Plaintiff asserts that this practice is facilitated by the refusal to give the buyer a copy of the RISC at the time of the sale, since the buyer is unlikely to understand or pursue his or her rights and has no documentation proving the terms of their bargain that existed at the time of the sale. Even if the consumer requests a copy, Plaintiff alleges that Defendant's practice is to deny the request. These allegations do not suggest inadvertent and innocent error that has no impact on the buyer's bargain.

This Court need not decide whether "substantial compliance" with the delivery requirement under Michigan law would permit any grace period for inadvertent failure and otherwise prompt delivery, since that is not the situation at bar.[4] Clearly, if Plaintiff's allegations are true, Defendant did not come close to achieving "substantial compliance" with respect to the delivery requirement.

### 2. Defendant's Argument that MVISCA Was Repealed by Implication

■■■■ Defendant also argues that Plaintiff's MVISCA claim should be dismissed because the MVISCA was repealed by implication by the Michigan Motor Vehicle Sales Finance Act (MVSFA), Mich. Comp. Laws § 492.112 *et seq.* First, the intention of the legislature to repeal by implication must be clear, as courts are loath to conclude a statute has been repealed by implication if there is any other reasonable construction. *See Dodak v. State Admin. Bd.,* 441 Mich. 547, 495 N.W.2d 539, 546 (1993). Repeal can only be implied if (1) it is clear that a subsequent legislative act conflicts with a prior act, or (2) a subsequent legislative act is clearly intended to occupy the entire field covered by a prior enactment. *Id.*

■■■ The MVSFA specifically refers to the MVISCA: "Compliance with the requirements of the Truth in Lending Act, title I of Public Law 90–321 ... is compliance with the disclosure provisions of section 13 [of the MVSFA] and of section 2 of Act No. 305 of the Public Acts of 1939, being section 566.302 of the Michigan Compiled Laws [known as the MVISCA]." Mich. Comp. Laws § 492.122a. Referring to the MVISCA in this manner suggests its continued viability, since if the MVISCA was repealed, it seems unlikely that the legislature would refer the reader to the disclosure provisions in a repealed law.

In addition, Defendant could not point to any parts of the two statutes that conflict. Defendant pointed to several parts of the MVSFA that added regulation above what the MVISCA required, but there is no conflict because it is still possible to comply with both statutes at the same time.

Such a situation could, however, indicate that the later-enacted MVSFA occupies

---

4. Plaintiff suggests that under Michigan law, "substantial compliance" with respect to a deadline set by statute can only be achieved by actually meeting the deadline. *See Northern Concrete Pipe, Inc. v. Sinacola Companies–Midwest,* 461 Mich. 316, 603 N.W.2d 257, 261 (1999). In *Northern Concrete Pipe,* the Michigan Supreme Court said, "A precise deadline is not well suited to an analysis of what constitutes 'substantial compliance.' Absent any additional statutory or judicial guidance, any determination of an alternate deadline, be it ninety-one days or one hundred days or more, is merely arbitrary." *Id.*

the entire field of the earlier-enacted MVISCA. Plaintiff argues that MVSFA does not occupy the entire field of the MVISCA because, in an example relevant to the case at bar, while the MVSFA provides a criminal remedy for willful disclosure violations and a civil remedy for the assessment of "prohibited" charges, the MVISCA provides only a civil remedy for any disclosure violation, whether willful or not. Based on this, and the Court's reading of the MVSFA, the Court holds that the MVISCA was not impliedly repealed by the Michigan legislature.[5] Therefore, the Court will not dismiss Plaintiff's MVISCA claim.

## C. Plaintiff's Michigan Motor Vehicle Sales Finance Act Claim

As to Plaintiff's claim against Defendant under the Michigan Motor Vehicle Sales Finance Act (MVSFA), Mich. Comp. Laws § 492.112 *et seq.*, Defendant argues that the MVSFA only provides for criminal remedies as to a seller's willful failure to deliver a copy of the contract. The MVSFA requires that the seller deliver a copy of the contract at the time of sale. *See* Mich. Comp. Laws § 492.112(c). Defendant asserts that none of the MVSFA's civil remedies apply to its delivery requirement, but instead, only apply to cases where the seller has attempted to extract "prohibited costs or charges in connection with the contract." Mich. Comp. Laws § 492.131(d).

■■■ Plaintiff argues that the finance charges charged by Defendant are undisclosed because of the failure to deliver the copy of the contract, and that undisclosed charges are "prohibited charges."

The Court, however, does not draw the same conclusion that an undisclosed charge is a "prohibited charge" under this statute when the non-disclosure results from failure to deliver the contract copy. *Cf.* Mich. Comp. Laws § 492.113(2); *see also Lozada II,* 136 F.Supp.2d at 727. There is no support in the statutory language for such a result. In fact, this point is clear from the context, in that another statute provides a remedy as discussed above. Therefore, the Court will dismiss this Count of Plaintiff's complaint.

## D. Plaintiff's Michigan Consumer Protection Act Claim

■■■ Plaintiff also alleges a violation of the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.903. Plaintiff and the class may only recover actual damages under this statute. *See* Mich. Comp. Laws § 445.911(3). Statutory damages are not authorized for class actions. *See* Mich. Comp. Laws § 445.911(2). Contrary to Defendant's assertion in its Motion, Plaintiff has claimed actual damages as a result of Defendant's alleged violations of the MCPA in her complaint. (*See* Complaint, Dkt. No. 1, at ¶ 40 ("Plaintiff has suffered loss as a result of defendant's multiple violations of the MCPA.").) Thus, dismissal would be inappropriate.

## E. Plaintiff's Michigan Credit Reform Act Claim

■■■ Plaintiff makes a claim under the Michigan Credit Reform Act (MCRA), Mich. Comp. Laws § 445.1852(f), which prohibits regulated lenders from requiring

---

**5.** The Court read the 1952 scholarly article cited by Defendant for the proposition that the MVSFA impliedly repealed the MVISCA. But the article did not contain any support for its supposition that this Court could locate in this article, and the authors mentioned this conclusion merely in the form of an assump-

tion. *See* William B. Cudlip and Daniel J. Tindall, Jr., *The Michigan Motor Vehicle Sales Finance Act,* 31 Mich. St. B.J. 14, 14 (Jan. 1952) ("Presumably, the [MVSFA] repeals by implication the provisions of act 305 of the Public Acts for 1939 [the MVISCA] ....").

a buyer to pay an excessive fee or charge. *See* Mich. Comp. Laws § 445.1856(4). Plaintiff argues that she. has been charged an excessive charge because she argues that her finance charge was a charge prohibited by law, *i.e.*, under the MVSFA. However, that makes Plaintiff's MCRA claim dependent upon the viability of her MVSFA claim, a point which Plaintiff acknowledged in her brief. Therefore, dismissal is proper as to this claim as well.

## F. Plaintiff's Replevin Claim

 Plaintiff makes a claim for replevin of the finance charges that she has paid under her sales contract with Defendant. Plaintiff claims that these finance charges have been wrongfully collected from her because Defendant's statutory violations entitle her to the remedy of noncollection of the finance charges. While this claim may prove to be true, replevin is an action used to effect the return of the subject property taken, not for the return of money. For one, the actual payment made to Defendant or a finance company has surely long since passed to a bank or elsewhere in the stream of commerce. *See Behlen Mfg. Co. v. Andries–Butler, Inc.*, 52 Mich.App. 317, 217 N.W.2d 125, 127 (where property has passed out of Defendant's possession, replevin does not lie). Personal property that is incapable of identification and seizure because of its fungibility or because of its intangible nature cannot be subject to replevin. *See Williams Mgmt. Enter., Inc. v. Buonauro*, 489 So.2d 160, 163 (Fla.App.Ct.1986) (holding that funds within a bank account were not subject to replevin). If Plaintiff obtains a judgment against Defendant under any of her claims, there are other judicial processes proper for obtaining the return of payments on the finance charges already made. Therefore, the Court dismisses this count of Plaintiff's complaint.

## G. Plaintiff's Unjust Enrichment Claim

 Finally, Plaintiff makes a claim against Defendant for unjust enrichment on the same basis as her replevin claim. Unjust enrichment is an equitable claim made when the defendant has received a benefit from the plaintiff and an inequity results because of the defendant's retention of the benefit. *Barber v. SMH, Inc.*, 202 Mich.App. 366, 509 N.W.2d 791, 796 (1993). Where that happens, the law implies a contract between the two individuals, as if they had contracted for the exchange of the benefit and the compensation that the court confers upon the plaintiff. *See id.* Plaintiff claims that Defendant has violated statutes in the making of their contract and delivery of a copy of that contract to her which entitle her to certain remedies, including the return of money that she has paid to Defendant. Plaintiff has not, however, substantively claimed that Defendant has wrongfully received a benefit outside of the contract that they made. Thus, the Court will dismiss this count of Plaintiff's complaint.

## IV. Analysis of Defendant's Motion to Certify to the Michigan Supreme Court or, Alternatively, to Decline Supplemental Jurisdiction

### A. Certifying a Question or Questions to the Michigan Supreme Court

No Michigan appellate court decision has interpreted the four state laws at issue in any relevant decision to these facts. That is not normally enough for a federal district court to certify a question to the Michigan Supreme Court.

 Where a state law question is sufficiently clear, whether from the text of the state statute itself or from analogy to a state court decision, for example, a federal judge can and should decide a state law

question. *Cf. American Fidelity Bank & Trust Co. v. Heimann,* 683 F.2d 999, 1002 (6th Cir.1982) (where task is simple interpretation of statutory language alone, because of no available legislative history and no state court decisions construing analogous state statutes, federal court decision appropriate); *Peterson v. Chesapeake & Ohio Ry. Co.,* 1988 U.S. Dist. LEXIS 18137, at * 15–16 (W.D. Mich. April 28, 1988) (Bell, J.) (state law sufficiently clear that certification not warranted). A federal court may also consider the delay that will occur if a question is certified to the state supreme court, with the possibility that the delay will be for nought if the state supreme court declines to hear the certified question. *See Heimann,* 683 F.2d at 1002; *Peterson,* 1988 U.S. Dist. LEXIS 18137, at * 16. Finally, certification is not warranted where "certification would effectively duplicate judicial exertion on a question which this Court does not consider to be close, providing [the losing party] with an unwarranted second chance to litigate in the state court after failing in the federal court." *Peterson,* 1988 U.S. Dist. LEXIS 18137, at * 16.

■ However, in a case where federal jurisdiction was premised solely on diversity of citizenship of the parties, the Sixth Circuit has certified a question to the Michigan Supreme Court where it found that the legal question before it involved purely one of interpretation of Michigan statutes and it found "substantial ground for difference of opinion." *Knox v. Eli Lilly and Co.,* 592 F.2d 317, 319 (6th Cir. 1979).[6] Where comity considerations are relevant to the particular issue and case to be decided, that would weigh in favor of certification. *See Florida ex rel. Shevin v.*

*Exxon Corp.,* 526 F.2d 266, 275 (5th Cir. 1976), *rehrg. den.,* 529 F.2d 523, *cert. den.,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92.

The *Lozada III* Court declined to certify a question regarding the interpretation of the MVISCA, noting that the question of state law involved was not close. *See Lozada III,* 145 F.Supp.2d at 895. He found that Michigan Supreme Court cases on statutory construction gave clear guidance to the Court on the interpretation of the MVISCA. *Id.* at 894–95. Because the question of law was not close, it did not offend principles of federalism or comity to decide an issue of state law that had not yet been reached by a Michigan appellate court. *Id.* at 895.

■ Defendant suggests that the fact that Judge Graves came to a different conclusion means that this is not a close legal question. Judge Graves' analysis centered on his beliefs as to the intent of the Michigan Legislature and focused less on the statutory language. The Michigan Supreme Court has said that "the object of judicial statutory construction is not to determine whether there are valid *alternative* policy choices that the Legislature may or should have chosen, but to determine from the text of the statute the policy choice the Legislature *actually* made." *People v. McIntire,* 461 Mich. 147, 599 N.W.2d 102, 109 n. 10[7] (Mich.1999) (emphasis in original). As described above, this Court found the text of the statute clear as to the policy choice that the Legislature made when it passed the MVISCA. Given that this Court does not consider this a close legal question, and given the delay which will inevitably result from cer-

---

6. In that matter, the Michigan Supreme Court declined to hear the certified question, and thus the Sixth Circuit was forced to interpret the issue of Michigan law anyway. *See Knox,* 592 F.2d at 319.

7. This footnote is footnote 4 in the Michigan Reports. *See People v. McIntire,* 461 Mich. 147, 157–58 n. 4, 599 N.W.2d 102 (1999).

tification, this Court declines to certify this question.

Similarly, the Court did not consider the statutory construction of any of the other Michigan laws at issue to be close questions, either. Therefore, the Court will deny Defendant's motion to certify any questions to the Michigan Supreme Court.

## B. Declining Supplemental Jurisdiction

■ This Court may decline to exercise its supplemental jurisdiction over the state law claims in this matter if (1) the claim raises a novel or complex issue of State law, or (2) the claim substantially predominates over the TILA claim. *See* 28 U.S.C. § 1367(c).[8] The decision whether to exercise supplemental jurisdiction is within the discretion of the Court. *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir.2000).

■ The Court has previously discussed why it did not find the state law claims so novel or complex as to warrant certification to the Michigan Supreme Court, and for the same reasons, declining supplemental jurisdiction over them is not warranted. This is particularly true where the factual questions are the same for both the federal and state law claims, meaning that declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations.

■ Moreover, this Court does not find that the state law claims remaining substantially predominate over the TILA claim. Whether state law claims "substantially predominate" over federal law claims has been called a *"qualitative* rather than *quantitative* inquiry." *Clark v. Milam*, 813 F.Supp. 431, 435 (S.D.W.Va.1993) (emphasis in original) (citing *Moore v. DeBi-*

*ase*, 766 F.Supp. 1311, 1319 n. 15 (D.N.J. 1991), *rejected on other grounds, Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir.1995)). "The question comes down to 'whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.'" *Clark*, 813 F.Supp. at 435 (quoting *Moore*, 766 F.Supp. at 1319). Adjudicating the state law claims in a state court would take more resources, since the factual proofs are identical for both claims. The TILA claims are substantial claims standing alone. The fact that the total worth of the state law claims could *potentially* amount to a higher damage award than the TILA claims does not make the state law claims necessarily more salient than the TILA claims of the class. The subject matter of this dispute is also not uniquely the province of state government, either. *See Baskin v. Bath Township Bd. of Zoning Appeals*, 101 F.3d 702, at *7 (6th Cir. Nov.21, 1996) (unpublished) (affirming decline of supplemental jurisdiction where state law claims concerned zoning regulations). Therefore, the Court is not convinced that the state law claims "substantially predominate" over the federal claims, and will not decline supplemental jurisdiction in this case.

## V. Conclusion

Therefore, the Court will grant in part and deny in part Defendant's Motion for Judgment on the Pleadings. Plaintiff's TILA claim, her MVISCA claim, and her MCPA claim on behalf of herself and the class remain. In addition, the Court will deny Defendant's Motion to Certify to the Michigan Supreme Court or, Alternatively, to Decline Supplemental Jurisdiction. An

---

8. Two other circumstances not relevant to this case also exist under which a district

court may decline to exercise supplemental jurisdiction.

order consistent with this opinion will be entered.

### ORDER

In accordance with an Opinion filed this day,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 31) is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that dismissal is **DENIED** as to Plaintiff's Truth in Lending Act (TILA) claim, Michigan Consumer Protection Act (MCPA) claim, and Michigan Motor Vehicle Installment Sales Contracts Act (MVISCA) claim.

**IT IS FURTHER ORDERED** that Count 4 of Plaintiff's complaint, alleging a claim under the Michigan Motor Vehicle Sales Finance Act (MVSFA); Count 5, alleging a claim under the Michigan Credit Reform Act (MCRA); Count 6, alleging a replevin claim; and Count 7, alleging an unjust enrichment claim, are **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Certify to the Michigan Supreme Court or, Alternatively, to Decline Supplemental Jurisdiction (Dkt. No. 85) is **DENIED.**