Donald A. HAUN, Plaintiff,

v.

DON MEALY IMPORTS, INC. d/b/a Courtesy Acura, and Liberty Mutual Insurance Company, Defendants.

Case No. 6:03–cv–929–Orl–18–JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 6, 2003.

---

J. Gordon Blau, Patrick H. Willis, J. Gordon Blau, P.A., Orlando, FL, for Plaintiff.

Tracey L. Ellerson, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, George A. Borden, Luba Shur, Williams & Connolly, Washington, DC, Ronald R. Howell, Vernis & Bowling of Central FL., P.A., Deland, FL, for Defendants.

### ORDER

G. KENDALL SHARP, District Judge.

THIS CAUSE comes before the Court on motions to dismiss for failure to state a claim, or, in the alternative, for summary judgment by Defendant Don Mealy Imports, Inc., d/b/a Courtesy Acura ("Courtesy") (Doc. 16, filed 11 August 2003) and Defendant Liberty Mutual Insurance Company ("Liberty Mutual") (Doc. 18, filed 11 August 2003), to which Plaintiff Donald A. Haun ("Plaintiff") has responded in opposition (Doc. 21, filed 22 August 2003).

## I. BACKGROUND

This cause of action arises from Plaintiff's attempt to purchase a used vehicle from Courtesy on 26 May 2003. On that day, Plaintiff came to Courtesy's place of business to inquire about a Chevrolet Sport Utility Vehicle he had seen advertised in the newspaper. A Courtesy sales representative told him that the advertised vehicle had already been sold, but showed Plaintiff a used 1999 Chevrolet Suburban ("the vehicle"). Plaintiff and the sales representative negotiated a cash price of $13,000.00 "together with" other fees. (Doc. 22, filed 22 August 2003, at ¶ 4; Doc. 17, filed 11 August 2003, at 2.)

Courtesy prepared a Retail Buyer's Order [1] ("Buyer's Order"), which, among other things, included a section describing the terms of the warranty on the car, and another section listing several fees. (Doc. 22, Exhibit A.) Plaintiff signed the Buyer's Order.

Courtesy prepared a Retail Installment Sales Contract ("RISC"). (Doc. 22, Exhibit B.) The relevant contents of the RISC are as follows: A boxed-in section labeled "Itemization of Amount Financed," is made up of two columns. The left column contains descriptions of charges and the right column provides a space in which the amounts of the charges may be filled in. Line Four is divided into eight sections (4A–4H), and is entitled "Other Charges Including Amounts Paid to Others on Your Behalf." The following appears on Lines 4F and 4G (the bolded terms are those that were typed on the form):

F *Government License and/or Registration Fees (Identify) LIC 248* **$248.000**
G *Government Certificate of Title Fees* **$N/A**

Line 4H is designated "Other Charges (Seller must identify who is paid and de-

---

1. Plaintiff sometimes refers to this as the "Purchase Order," but Exhibit A is entitled a "Retail Buyer's Order." (Doc. 22, Exhibit A.)

scribe purpose)." A three-column table makes up this subsection. The following appears:

| to WESTERN | for SERVICE CONT. | $1705.00 |
| to | for GAP INS | $ 499.00 |
| to | for | $ |
| to | for VCP | $ 570.00 |

Plaintiff also signed a Bailment Agreement for Vehicle Spot Delivery ("Bailment Agreement"). (Doc. 22, Exhibit C.) Plaintiff alleges that the form was at the bottom of a pile of other forms and that all but the signature line of the form was covered up. Plaintiff also asserts that when he asked what the form was, a Courtesy representative told him it was a copy of a form Plaintiff had already signed. Plaintiff alleges that he signed the form without reviewing its terms in reliance on this representation.

Plaintiff signed other documents he does not identify in his Amended Complaint.[2] He asked for a copy of all documents he had signed. Plaintiff alleges that the representative did not give him one of the Bailment Agreement. Plaintiff asserts that another representative told Plaintiff two days later that it was Courtesy's practice to not give customers copies of the Bailment Agreements.

Plaintiff wrote a check to Courtesy for $2,000.00 as a down payment and drove the vehicle home. Plaintiff states that comments made by Courtesy representatives and a clause in the RISC[3] led him to believe that the sale was final.

On 28 May, Courtesy's assistant manager informed Plaintiff that Courtesy was having trouble getting financing approval for him. The assistant manager and Plaintiff agreed that Courtesy would make additional efforts to get Plaintiff approved and, to that end, Plaintiff would increase his down payment to half of the purchase price. The assistant manager indicated that another representative would try to get Plaintiff approved on 29 May.

On 29 May, a Courtesy representative called Plaintiff and told him to return the vehicle to Courtesy's vehicle lot because Plaintiff was not approved for financing. Plaintiff demanded that Courtesy have his $2000.00 available when Plaintiff returned the vehicle.

Plaintiff went to Courtesy's lot later that day. A Courtesy representative told Plaintiff that Courtesy had already deposited the down payment and that Courtesy's comptroller would mail Plaintiff the money at an unspecified date. He also told Plaintiff that he could do nothing more for him. After speaking with a second Courtesy representative, Plaintiff handed over the keys to the vehicle and left. On 18 June, Courtesy mailed Plaintiff a check for $2000.00. (Doc. 16, Declaration of Christena Buzard).

Plaintiff filed suit in the Seminole County Court in the Eighteenth Judicial Circuit of Florida. (Doc. 2, filed 7 July 2003.) Defendants thereafter removed the case to this court on the basis of federal question jurisdiction. (Doc. 1, filed 7 July 2003.) Defendant Courtesy then submitted a "Motion to dismiss or, in the alternative, motion for summary judgment" (Doc. 16, filed 11 August 2003) and a memorandum in support of that motion (Doc. 17, filed 11 August 2003). Liberty Mutual incorporated Courtesy's memorandum into its own Memorandum (Doc. 19, filed 11 August 2003) in support of its "Motion to dismiss or in the alternative for summary judgment" (Doc. 8, filed 11 August 2003).

Plaintiff filed a "Memorandum of law in opposition to Defendants' motion to dis-

---

**2.** Plaintiff describes them only as "contract, title, registration, license and disclosure documents." (Doc. 22 at ¶ 5.)

**3.** "This contract contains the entire agreement between you and us relating to this contract." (Doc. 22, Ex. B.)

miss or, in the alternative, motion for summary judgment" ("Memorandum in Opposition"). (Doc. 21, filed 22 August 2003.) On the same day, Plaintiff filed an Amended Complaint. (Doc. 22, filed 22 August 2003.)

## II. DISCUSSION

Plaintiff's Amended Complaint is in six parts, the first five of which are against Courtesy: Claim I alleges fraud, Claim II alleges violations of the Florida Deceptive and Unfair Trade Practices Act ("DUTPA"), Claim III alleges violations of the federal Truth in Lending Act ("TILA"), Claim IV alleges violations of the Florida Motor Vehicle Retail Sales Finance Act, and Claim V alleges breach of contract. Claim VI is a statutory surety bond claim against Liberty.

### A. Failure to State a Claim

For purposes of a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Fed R. Civ. P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir.1994). Furthermore, a court must accept all reasonable inferences from the complaint and consider all allegations as true. *Id.* A court may not, however, accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle*, 833 F.Supp. 906, 910 (S.D.Fla.1993) (*citing Associated Builders, Inc., v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974)). Only pleadings and attached written exhibits may be considered in making these determinations. *See Fed.R.Civ.P.* 10(c); *GSW, Inc., v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993). Unless it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief, a complaint should not be dismissed for failure to state a claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);

*Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994).

A court may not assume, however, that plaintiff can prove facts that he has not alleged or that defendant has violated laws in ways that have not been alleged. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir.1992) (per curiam). Nor is the Court bound to accept as true a legal conclusion couched as a factual allegation. *See B.H. Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although the federal rules embrace a liberal pleading standard, bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

### B. Summary Judgement

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c); *see e.g., Edwards v. Acadia Realty Trust, Inc.*, 141 F.Supp.2d 1340, 1344–45 (M.D.Fla.2001). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its

burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy its burden. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories or admissions that designate specific facts indicating there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### C. Claim III: Truth in Lending Act & Regulation Z

Plaintiff alleges that Courtesy failed to comply with several requirements of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (2001 & Supp.2003), and Regulation Z, 12 C.F.R. § 226 *et seq.* (2003), "with particular reference to 15 U.S.C. § 1638." (Doc. 22, ¶ 38.)[4] Specifically, Plaintiff alleges: 1) Courtesy made an inaccurate disclosure of "license, title, and registration fees" on lines 4F and 4G of the RISC (Doc. 22, ¶ 43(a)); 2) Courtesy's disclosures regarding GAP and VCP insurance

fees were inadequate (Doc. 22, ¶ 43(b)); and 3) Courtesy violated TILA by not providing Plaintiff with a separate personal copy of a disclosure statement prior to obtaining Plaintiff's signature on the RISC. (Doc. 22, ¶¶ 42, 43(c).)[5]

Defendants' principal argument is that the requirements of TILA do not apply to transactions that are not consummated according to state law. (Doc. 17 at 4.) *See* 12 C.F.R. §§ 226.17(b), 226.2(a)(13). Because the Court finds for Defendants for other reasons and wishes to avoid unnecessary interpretation of state law, the Court does not reach this issue.

### 1. License, Title and Registration Fees, 15 U.S.C. § 1638(a)(2)(B)(iii)

Plaintiff contends that Courtesy violated TILA and Regulation Z by typing the figure "LIC $248.00" on the RISC Line designated "Government License and/or Registration Fees (Identify)" (Line 4F) and typing "N/A" on the line designated "Government Certificate of Title Fees" (Line 4G). (Doc. 22 at ¶¶ 8, 43(a).)

Plaintiff attempts to cast his net at its widest by making only general reference to entire titles of the U.S.Code and the Code of Federal Regulations and by stating the Defendant violated TILA in ways "including, but not limited to" those listed in his Amended Complaint. (Doc. 22, ¶¶ 37–43.) It is not news that TILA and Regulation Z are confusing. *See Smith v. Ford*, 456 F.Supp. 1138, 1142 (W.D.Tenn. 1978). Plaintiff has not helped matters by pleading a violation of "15 U.S.C. § 1601 *et seq* .... with specific reference to 15

---

**4.** The Board of Governors of the Federal Reserve System is empowered to "prescribe regulations to carry out the purposes" of the disclosure guidelines in TILA. 15 U.S.C. § 1604(a).

**5.** The original complaint included a claim that Defendant violated TILA by "failing to disclose ... the $499.00 settlement and clos-

ing fee" in accordance with TILA. (Doc.2 at ¶ 40(c).) This allegation is conspicuously absent from the Amended Complaint. An amended complaint must contain any claim Plaintiff wishes to make. *Schebel v. Charlotte County*, 833 F.Supp. 889, 890 (M.D.Fla.1993). Plaintiff therefore no longer maintains a TILA claim regarding this settlement and closing fee.

U.S.C. § 1638," (Doc. 22 at ¶ 38) and by not explaining what it is he claims should have been on Lines 4F and 4G of the RISC.[6]

Though Defendants did not plead inadequate notice and the pleading rules are deferential to plaintiffs, Plaintiff made it very difficult for the Court to ascertain his claims and the Court cautions Plaintiff to recall that "it is not the duty of the trial court ... to create a claim which [he] has not spelled out in his pleading," *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 677 (5th Cir.1961 [7]), and that the Eleventh Circuit consistently condemns "shotgun pleading." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir.2002).[8]

The Court understands Plaintiff's claim to be that the $248.00 listed as a "Government License and/or Registration Fees," in the "Itemization of Amount Financed" section of the RISC, (Doc. 22, Ex. B) should have been further itemized and that, by failing to break down the $248.00, the Defendant violated 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 226.18(c). Plaintiff seeks actual and statutory damages in conjunction with this claim. (Doc. 22 at ¶¶ 44–46.) In the spirit of generosity encouraged by the rules of pleading, the Court will address Plaintiff's claims for actual and statutory damages arising from Plaintiff's allegations regarding Lines 4F and 4G as attempting to state claims under 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 226.18(c).

### a. *Actual Damages*

■ TILA requires a creditor who itemizes the "amount financed" to disclose, among other things, "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person...." 15 U.S.C. § 1638(a)(2)(B)(iii). A creditor may describe some of these third parties, including "public officials or government agencies," "using generic or other general terms." 12 C.F.R. § 226.18(c)(iii). A creditor who fails to comply with "any requirement imposed under" TILA is liable to any person for "any actual damage sustained by such person *as a result of* the failure...." 15 U.S.C. § 1640(a)(1) (emphasis added). Because Plaintiff does not sufficiently allege actual damages, he fails to state a claim and Defendants' motions to dismiss are granted as to this claim.

Plaintiff alleged no actual damages in Claim III stemming from any of Courte-

---

**6.** Moreover, in his discussion regarding these fees in the Memorandum in Opposition, Plaintiff cites cases that interpret no one single section of TILA or type of violation and does not explain for what purpose they are cited: *Downey v. Whaley Lamb*, 607 F.2d 1093 (5th Cir.1979) (interpreting 12 C.F.R. § 226.4(b)); *Cannon v. Cherry Hill Toyota*, 161 F.Supp.2d 362 (D.N.J.2001) (interpreting § 1638(a)(2)(B)); *Gibson v. Bob Watson Chevrolet–Geo* 112 F.3d 283 (7th Cir.1997) (interpreting *both* §§ 1638(a)(2) and (a)(3)). (Doc. 22 at 14.)

**7.** Decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir1981).

**8.** While on the subject of submissions to the Court, the parties also should note that they both cited cases that discuss regulations that have been significantly amended since passage of the 1980 Truth in Lending Simplification and Reform Act, P.L. No. 960221, Title VI, including *Downey v. Whaley Lamb*, 607 F.2d 1093 (5th Cir.1979). (Doc. 17 at 6; Doc. 21 at 14.) For a discussion of the changes to Regulation Z, see generally *In re Brown*, 106 B.R. 852 (Bankr.E.D.Pa.1989). Plaintiff also misidentifies *Downey* as a 1981 case. Not only is this 1979 case out of date, it is concerned with "finance charges," which Plaintiff does not mention anywhere in the Amended Complaint.

sy's alleged failures to comply with TILA. He does state that "as a direct result of Courtesy's [several alleged TILA violations], Plaintiff's statutory and regulatory rights have been violated, and for which [sic] Plaintiff is entitled to statutory and actual damages...." (Doc. 22 at ¶ 44). This conclusory and circular statement does not allege any facts that, if proven, would constitute actual damages.[9]

Plaintiff cites several cases in support of the argument that if the Court finds any violation of TILA, "no matter how technical, it has no discretion with respect to the imposition of liability." (Doc. 21 at 14.) In contrast with the instant case, the plaintiff in all of the cited cases alleged actual damages, or the plaintiff alleged a violation of TILA that subjects the violator to *statutory* damages liability. *See Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir. 1976); *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 284 (6th Cir.1997); *Daenzer v. Wayland Ford, Inc.,* 193 F.Supp.2d 1030, 1035 (W.D.Mich.2002). It is true that the imposition of liability is not subject to the Court's discretion, but it is subject to the damages provision of the law in question.

The Court accordingly grants Defendants' motions to dismiss Plaintiff's claim for actual damages stemming from allegations that Courtesy's disclosures on Lines 4F and 4G of the RISC violated 15 U.S.C. § 1638(a)(2)(B)(iii).

### b. Statutory Damages

█ Plaintiff also prays for statutory damages based on Defendant's alleged failure to itemize the government fees on the RISC in accordance with § 1638(a)(2)(B)(iii). (Doc. 22 ¶¶ at 45–46.) TILA's statutory damages provision does not provide for statutory damages for a failure to itemize in accordance with § 1638(a)(2)(B). The Court accordingly dismisses this portion of Claim II.

Section 1640(a)(2)(A) states that, with exceptions, statutory damages are available to individuals in the event of a defendant's failure to comply with TILA. One of the exceptions within this damages section is for violations of the itemization requirements of § 1638(a)(2)(B): Liability for statutory damages for violations of § 1638(a)(2) exists "only ... insofar as [§ 1638(a)(2)] requires a disclosure of the 'amount financed.'" 15 U.S.C. § 1640(a)(4).

Thus, only a failure to disclose the *entire* "amount financed" as required by § 1638(a)(2)(A) implicates statutory damages liability. Failure to *itemize* the amount financed, as required by § 1638(a)(2)(*B*) does not subject a creditor to statutory damages liability. Because the latter is excepted from the statutory damages scheme, plaintiffs may only recover *actual* damages stemming from failures to itemize, where, as discussed above, they plead and can show damage. *See Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 991 (7th Cir.2000); *Peters v. Jim Lupient Oldsmobile Co.,* 220 F.3d 915, 917 (8th Cir.2000); *Martin v. Equity One Consumer Discount Co., Inc.,* 194 F.Supp.2d 469, 472 (W.D.Va.2002); *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578, 590 (W.D.Mich.2001).

Nowhere in the Amended Complaint does Plaintiff allege that Courtesy failed to disclose the "amount financed;" he only alleges a failure to itemize that amount. The Court accordingly grants Defendants'

---

**9.** In Claim II, Plaintiff lists some items as "damages." (Doc. 22 at ¶ 32.) They are tied to the state claims in Claim II, and beyond the conclusory statement that they are the "direct and proximate result of Courtesy's deceptive and unfair trade practices" (*id.*), Plaintiff gives no hint of how they might the "result of" a failure to comply with TILA, as the damages provision of TILA requires. 15 U.S.C. § 1640(a)(1).

motions to dismiss Plaintiff's statutory damages claim associated with allegations that Courtesy's disclosures on Lines 4F and 4G of the RISC violated 15 U.S.C. § 1638(a)(2)(B)(iii).

### 2. GAP and VCP Charges, 15 U.S.C. § 1638(a)(2)(B)(iii)

■ Plaintiff asserts that Defendant violated the itemization requirements of § 1638(a)(2)(B)(iii) of TILA and § 226.18(c)(1)(iii) of Regulation Z by not making clear who would receive the "GAP" and "VCP" payments listed within the "Itemization of the Amount Financed" section of the RISC. (Doc. 22 at ¶ 43(b); Doc. 21 at 13.) [10] Plaintiff's Amended Complaint does not allege "any actual damage sustained by such person as a result of the [alleged] failure . . . ." to properly disclose the recipients of the GAP and VCP payments. § 1640(a)(1). For the reasons stated in section C.1.a. of this Discussion, Plaintiff has thus failed to state a claim for actual damages under § 1640(a)(1). Plaintiff also fails to assert that Defendant did not disclose the "amount financed." He thus fails to state a claim for statutory damages under §§ 1640(a)(2) and 1640(a)(4) for the reasons stated in section C.1.b. of this Discussion. Defendants' motions to dismiss are therefore granted with regard to this claim.

### 3. Timing of Disclosures, 15 U.S.C. § 1638 and 12 C.F.R. § 226.17

■ Finally with regard to TILA, Plaintiff contends that the Act requires Courtesy to have provided Plaintiff with a personal copy of TILA disclosures "prior to obtaining Plaintiff's signature on the Financing Agreement." (Doc. 22 at ¶¶ 42,

43(c).) Plaintiff cites no statute or regulation that requires the Defendant to do this. The Court infers that Plaintiff is referring to § 1638(b)(1) of TILA and § 226.17(a) and (b) of Regulation Z, which stipulate "form and timing" requirements for the disclosure provisions of 15 U.S.C. § 1638 and 12 C.F.R. § 226.18. Because Plaintiff points to no material dispute of fact and because Courtesy complied as a matter of law with these regulations, the Court grants Defendants' motions for summary judgment with regard to this claim.

Section 226.17(a)(1) of Regulation Z, entitled "Form of disclosures," states that the creditor "shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep . . . ." In turn, § 226.17(b), entitled "Time of disclosures," states that the creditor "shall make disclosures before consummation of the transaction . . . ." Plaintiff attempts to meld these two sections into a requirement that Courtesy have provided him a personal copy of disclosures *separate* from those provided on the RISC he signed. Regulation Z does not require this.

Section 226.17(b) only requires that a consumer be given the disclosures before the transaction is consummated. The point of this subsection is that the consumer not be wheedled into consummating a transaction before being apprised of its terms. The requirement in § 226.17(a) that this appraisal take the form of a writing so that the consumer "may keep" them is separate from § 226.17(b) and not qualified by any timing element.[11] The point of this subsection is that the disclosures take a form that is permanent, capable of being

---

10. Although the point is moot, the Court notes that neither party defines these terms.

11. "May" is an ambiguous term, but in no way does it suggest timing. The statute could mean, among other things, "so that the consumer will be allowed to keep it," "so that the consumer will be capable of keeping it," or "so that the consumer possibly will keep it." *American Heritage Dictionary*, 808 (New College ed., 1976).

carefully considered, understood, and, at the consumer's election, compared to other creditors' terms.

The creditor may not orally disclose the terms of credit and only later, after consummation, give them in writing. To be sure, the consumer "may keep" the disclosure form when it is first presented to him. Nothing in the regulations, however, requires the creditor to give a consumer a *separate* personal copy of disclosures at a time before consummation where, as here, consummation takes place when the consumer signs the disclosure form or later. *Accord Harper v. Lindsay Chevrolet Oldsmobile, LLC,* 212 F.Supp.2d 582, 586–87 (E.D.Va.2002).

In this case, it is undisputed that any TILA disclosures made were in writing and on the RISC form. (Doc. 22, Ex. B.) It is also undisputed that Courtesy showed Plaintiff the RISC before Plaintiff signed it. (Doc. 22 at ¶¶ 6–7.) The legal moment of "consummation" is disputed, but no party argues that it took place before the signing of the RISC. Thus, there is no question that Courtesy made the disclosures to Plaintiff, in writing and in written form, before consummation of the transaction. Moreover, Courtesy made the disclosures in a copy of Plaintiff's own: The RISC that Courtesy asked Plaintiff to sign was the "Buyer's Copy," and, in a set-off section just above the Plaintiff's signature, states that the signer "confirm[s] that [he] received a completely filled-in-copy when [he] signed [the contract.]" (Doc. 22, Ex. B.)

Plaintiff has pointed to no factual dispute regarding when Courtesy provided the disclosures it did provide. Because Courtesy provided them in a timely manner and in proper form, Defendants' motions for summary judgment are granted with regard to this portion of the Claim III.

### D. Claim II: Florida Deceptive and Unfair Trade Practices Act

#### 1. Introduction

This claim, stated principally in one seventeen line-long sentence and in another eighty-two lines long, is a grab-bag of allegations and references to statutes and another example of Plaintiff's slapdash pleading style. (Doc. 22 at ¶¶ 301–31.) This is a state claim, as Plaintiff notes, "based upon violation of ... Florida's Deceptive and Unfair Trade Practices Act...." (*Id.* at ¶ 28.) The "examples" of Courtesy's actionable conduct are listed as "violations of" the Florida Deceptive and Unfair Trade Practices Act ("DUTPA"). (Doc. 22 at ¶¶ 27–29.) Nevertheless, Plaintiff makes passing reference to two federal statutes and the Court also finds that buried within Claim II are two other federal questions. The Court addresses the federal issues in this part of the Discussion.

#### 2. TILA, 15 U.S.C. § 1638

Because this basis for Plaintiff's complaint is addressed in detail in Claim III of the Amended Complaint and because Claim II states that it is "based upon violation" of DUTPA (Doc. 22 at ¶ 28), the Court will not address this passing reference and instead refers the parties to Part C of this Discussion.

#### 3. The Federal Trade Commission Act, 15 U.S.C. §§ 41, 45 and 16 C.F.R. § 455

The Court assumes that Plaintiff meant for his passing reference to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41, 45 (2001 & Supp. 2003), and the corresponding regulations in 16 C.F.R. § 455 (2003) to be associated with his claim under DUTPA (see section D.6. of this Discussion). Even if Plaintiff intended to state a claim, the Act "has never been construed to contain a private right of action." *LJS Co. v. Marks,* 480

F.Supp. 241, 243 (S.D.Fla.1979) (citing *Fulton v. Hecht*, 580 F.2d 1243, 1249–50 n. 2 (5th Cir.1978)).[12] Any claim based on it must be dismissed for failure to state a cause of action.

### 4. Claim for Equitable Relief under Fla. Stat. ch. 501.976(6)

█ Chapter 501.976(6) of the Florida Statutes states that a creditor commits an "unfair or deceptive act or practice, actionable under" DUTPA if he intends to limit or disclaim express warranties and does not make that disclaimer "in accordance with the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act." *Fla. Stat.* ch. 501.976(6) (2003); *see* 15 U.S.C. § 2301 *et seq.* (2001 & Supp.2003). A violation of DUTPA may be the "basis of an action to obtain a declaratory judgment" or an injunction if it is brought by "anyone aggrieved by" that violation. *Fla. Stat.* ch. 501.211(a); *see id.*, ch. 501.204 (declaring unfair or deceptive trade acts unlawful). This claim raises a federal question,[13] but because Plaintiff fails to allege *how* he was "aggrieved by" Defendant's acts, he fails to state the elements of harm and causation, essential to his claim. The Court thus need not reach the substance of the federal question.

█ To be the basis of "any relief," Plaintiff's DUTPA complaint must "not only plead .... that the conduct complained of was unfair and deceptive, but [he] must also plead .... [t]hat he ... was aggrieved by the unfair and deceptive act." *Macias v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997); *see also Urling v. Helms Exterminators, Inc.*, 468 So.2d 451–454 (Fla. 1st DCA 1985); *Klinger v. Weekly World News, Inc.*, 747 F.Supp. 1477, 1480 (S.D.Fla.1990).

Plaintiff does list several alleged "damages" he incurred "as a direct and proximate result of Courtesy's deceptive and unfair trade practices...." (Doc. 22 at ¶ 32.) Two in the list are exactly the same, "loss of benefit of the bargain damages." (Doc. 22 at ¶¶ 32(a), (e).) Both represent essentially "subjective feelings of disappointment" insufficient to state a claim under DUTPA, because Plaintiff never paid for the vehicle (whether he thought he had at the time of the transaction is irrelevant to an element of *actual* harm) and he does not dispute that Courtesy returned his deposit. *Crown Auto Dealerships, Inc.*, 187 B.R. 1009, 1018 (Bankr.M.D.Fla.1995) (quoted in *Macias*, 694 So.2d at 90).

Most glaring is the absence of any pleaded or apparent causal relationship between such "damages" and a violation of the Warranty Act. This deficiency also plagues Plaintiff's other statements of "damages." Plaintiff does not allege any relationship between Courtesy's warranty disclaimer and the "$499 settlement and closing fee," lost interest on the deposit money, gas cost, or car rental fees. (Doc. 22 at ¶¶ 32b-d.)

Though pleading rules are liberal, conclusory statements of "direct and proximate result" do not state an element.

**12.** Decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

**13.** A district court may find that federal jurisdiction exists "where a plaintiff's ability to obtain relief under a State law claim 'requires resolution of a substantial question of federal law.'" *Hayduk v. United Parcel Service, Inc.*, 930 F.Supp. 584, 596 n. 3 (S.D.Fla.1996) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 8 & 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Because one element of Plaintiff's claim for equitable relief under chapters 501.976(6) and 501.211 does turn on the interpretation of the federal Warranty Act, it raises a federal question.

(Doc. 22 at ¶ 32.) There is no basis for inferring that, proper warranty or no, Plaintiff would not have paid the settlement and closing fee or the down payment, that the defendant would have more quickly returned the down payment, or that Plaintiff's credit would have been approved and the rental fees avoided.

As alleged, these facts fail to state a claim under chapters 501.976 and 501.211(a) for declaratory or injunctive relief. Accordingly, that portion of Claim II seeking such relief based on chapter 501.976(6) is dismissed.

### 5. Claim for Damages under Fla. Stat. ch. 501.976(6)

■ Plaintiff fails to state a claim for damages based on *Fla. Stat.* ch. 501.976(6), which is "actionable under [DUTPA]," because there is no private right of action for civil damages under DUTPA. DUTPA contemplates enforcement by, and the assessment of damages in favor of only the office of the state attorney. *See* chs. 501.203(2), 501.207; *see also LJS Company v. Marks*, 480 F.Supp. 241, 243 (S.D.Fla.1979) (there is no private right of action for damages under DUTPA). All claims for actual damages under chapter 501.976(6) must therefore be dismissed for failure to state a claim.[14]

### 6. Claims under Fla. Stat. ch. 501.203(3)

A violation of DUTPA may be based on any of the following:

Any rules promulgated pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. ss 41 et seq.; (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices.

*Fla. Stat.* ch. 501.203(3)

■ A state action "raising a substantial question of federal law," such as the application of the rules promulgated pursuant to the federal FTC Act, can confer federal question jurisdiction and can also, therefore, support removal jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 8, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Where, however, Congress has provided no federal right of action for a violation of a federal law which is the basis of the state claim, federal courts may not exercise federal question jurisdiction over that state claim except by virtue of supplemental jurisdiction. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citing 28 U.S.C. 1331 (2001 & Supp.2003)); *see Florida v. Comcast Corp.*, 1994 WL 908873, *2 (holding that Defendant could not remove complaint seeking relief under *Fla. Stat.* ch. 501.203(c)). A state claim encompassing a federal element of this sort does not arise "under the Constitution, laws, or treaties of the United States" when Congress has opted to preclude such a claim in the federal statute. *Merrell Dow*, 478 U.S. at 813, 106 S.Ct. 3229.

The Court has already discussed, in section B.3., the absence of a private right of action for violations of the FTC Act. Though chapter 501.203 is based on this Act it cannot, of itself, support federal jurisdiction. All other federal questions

---

**14.** A plaintiff bringing an appropriate action for declaratory relief and/or injunctive relief under ch. 501.211(a) may, in conjunction with that action, seek damages, costs and fees if they have "suffered a loss as a result of" a DUTPA violation. ch. 501.211(b). This provision is not applicable here, however, because Plaintiff fails to state a claim for equitable relief under ch. 501.211(a).

have been dismissed or decided on summary judgment. For this reason, and for the jurisdictional reasons discussed in the next section, the Court remands the portion of Claim II relying on chapter. 501.203 along with Plaintiff's remaining claims.

### E. Remaining Claims against Courtesy (Claims I, IV, V)

Plaintiff's remaining claims are purely state law claims raising no federal questions and the Court declines to exercise supplemental jurisdiction over them. The Court previously had supplemental jurisdiction over the state law claims because they were supported by the federal questions raised by Plaintiff's Amended Complaint. 28 U.S.C. § 1367 (2001 & Supp. 2003); *Baggett v. First National Bank*, 117 F.3d 1342, 1352 (11th Cir.1997). Proper dismissal of the claims raising federal questions does not deprive the Court of supplemental jurisdiction, but the Court may decline to exercise that jurisdiction. § 1367(c). In making this determination, the Court may consider other factors such as judicial economy, fairness and comity. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir.1997); *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir.1994).

Resolution of Plaintiffs' remaining claims depends on determinations of state law: Claim I alleges fraud, Claim IV alleges a violation of the Florida Motor Vehicle Retail Sales Finance Act [15], and Claim V is a breach of contract action. State law claims are best resolved by Florida courts, especially where, as here, the Court has dismissed or otherwise disposed of the federal issues before trial. *See Baggett*, 117 F.3d at 1353. Judicial economy, fairness and comity dictate that the Court remand these state claims.

### F. Claim VI against Liberty Mutual: Fla. Stat. ch. 320.27(10)(b)

Plaintiff's claim against Liberty Mutual stems solely from the surety bond it issued pursuant to Florida law, which is to run "in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of a violation of" Florida dealer licensing rules by the principal, Courtesy. *Fla. Stat.* ch. 320.27(10)(b) (2003). Because this is a purely state claim and also dependent on Plaintiff's claims against Courtesy, the Court remands it together with the state claims against Courtesy.

### III. CONCLUSION

Based on the foregoing discussion, the Court rules as follows:

It is **ORDERED AND ADJUDGED** that:

1. Defendant Don Mealey Imports, Inc. d/b/a Courtesy Acura's Motion to Dismiss is **GRANTED** as to:

a. Plaintiff's claim for actual and statutory damages under TILA arising from allegations that Courtesy improperly itemized "license, title and registration" fees;

b. Plaintiff's claim for actual and statutory damages under TILA arising from allegations that Courtesy improperly itemized "GAP and VCP" fees;

---

15. *Fla. Stat.* ch. 520.07(e), which Plaintiff also mentions in Claim IV, provides:

Except for the requirement in subsection (3) that a separate written itemization of the amount financed be provided, a contract which complies with the federal Truth in Lending Act, 15 U.S.C. ss. 1601 et seq., or any accompanying regulations shall be deemed to comply with the provisions of this subsection and subsection (3).

Because this state claim does not "require resolution" of TILA questions, it does not confer federal question jurisdiction on this Court. *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841.

c. Plaintiff's claim for declaratory judgment, injunction, and damages under the FTC Act, **WITH PREJUDICE**;

d. Plaintiff's claim for declaratory judgment, injunction, and damages under chapters 501.976(6) and 501.211(a) of the Florida Statutes.

2. Defendant Don Mealey Imports, Inc. d/b/a Courtesy Acura's Motion for Summary Judgment is **GRANTED** as to:

a. Plaintiff's claim for actual and statutory damages under TILA arising from allegations that Defendant's TILA disclosures were untimely or in improper form.

3. All other claims are **REMANDED** and all other pending motions are **DENIED AS MOOT**.